Deborah C. Saxe (State Bar No. 81719)
dsaxe@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Aaron Agenbroad (State Bar No. 242613)
alagenbroad@jonesday.com
JONES DAY
555 California Street
26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Attorneys for Defendant
CHEVRON STATIONS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Catherine Tremblay, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Chevron Stations, Inc., a Delaware Corporation,<br><br>Defendant. | CASE NO. CV 07-6009 EDL<br><br>**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**<br><br>Complaint Filed: November 28, 2007 |

1. **Brief statement of the events underlying the action:**

Plaintiff Catherine Tremblay worked for Chevron Stations, Inc. ("Chevron") for approximately five months. She was employed at Chevron's Station 1759, which is a gas station in Santa Rosa, California. Her employment ended in April 2007.

Plaintiff frequently worked the "graveyard shift," which is an 8-hour shift that begins at 10:00 p.m. and ends at 6:00 a.m. During those hours, Plaintiff usually was the only employee in the station.

Plaintiff has filed a Complaint in which she seeks to represent a class consisting of all employees of Chevron in California who ever received a paycheck during the time period beginning 4 years before the Complaint was filed. She alleges that Chevron did not provide meal and rest periods for her or the absent class members in accordance with the applicable Wage Order, did not pay her or the absent class members all wages due at termination of employment in accordance with the requirements of California Labor Code § 201 or § 202, did not issue paystubs to her or absent class members that comply with California Labor Code § 226, did not pay all minimum wages and overtime compensation due pursuant to state and federal law, and violated Business & Professions Code § 17200 by engaging in these alleged unlawful acts.

**2.    Principal factual issues in dispute:**

Defendant has identified the following disputed factual issues. Plaintiff does not concede that they, or any of them, are relevant either to the claims she has asserted or to the class certification/collective action inquiry:

1. At any time during the alleged class period, did Chevron have a policy of not providing meal periods for any or all of the non-exempt employees working at its California gas stations as required by Wage Order 7?

2. Did Plaintiff agree with Chevron that she would receive an on-duty meal period (not an off-duty meal period) when she worked alone at the gas station on the 8-hour graveyard shift?

3. Did the nature of Plaintiff's work on the graveyard shift prevent Plaintiff from being relieved of all duty for 30 minutes?

4. Was the nature of Plaintiff's work on the graveyard shift at Station 1759 typical of the nature of the work performed by employees who worked on the graveyard shifts at any of the approximately 300 other Chevron stations in California during any or all of the alleged class period?

5. If Plaintiff expressly agreed (in writing) that she would not get an off-duty meal period when she worked alone on the 8-hour graveyard shift at Station 1759, was Chevron's failure, if any, to provide a 30-minute off-duty meal period for Plaintiff when she worked that

shift related at all to it's alleged failure to provide 30-minute off-duty meal periods for employees who worked the 8.5 hour day and swing shifts at Station 1759 and/or at any of the approximately 300 other Chevron stations in California during any or all of the alleged class period?

6. Did Plaintiff fail to take one or more meal periods during her employment at Chevron? If so, when and why?

7. Did other people who worked as non-exempt employees at Station 1759 during the alleged class period fail to take one or more meal periods during their employment at Chevron? If so, when and why? Did they fail to take them for the same reason Plaintiff did?

**8.** Did any of the approximately 15,000 people who worked as non-exempt employees at the approximately 300 other Chevron stations during the alleged class period fail to take one or more meal periods? If so, when and why? Did they fail to take them for the same reason Plaintiff did?

9. Did Chevron authorize and permit Plaintiff to take meal periods?

10. Did Chevron authorize and permit other non-exempt employees at Station 1759 to take meal periods during any or all of the alleged class period?

11. Did Chevron authorize and permit non-exempt employees at California stations other than Station 1759 to take meal periods during any or all of the alleged class period?

12. Were Plaintiff's experiences at Station 1759 with regard to meal periods typical of the experiences of those who worked at other Chevron stations in California during any or all of the alleged class period?

13. At any time during the alleged class period, did Chevron have a policy of not providing rest periods for any or all of the non-exempt employees working at its California gas stations as required by Wage Order 7?

14. Did Chevron authorize and permit Plaintiff to take a rest period of at least 10 minutes at the mid-point of each 4-hour period of work (insofar as practicable)?

15. During any or all of the alleged class period, did Chevron authorize and permit other non-exempt employees at Station 1759 to take rest periods of at least 10 minutes at the mid-point of each 4-hour work period (insofar as practicable)?

16. During any or all of the alleged class period, did Chevron authorize and permit non-exempt employees at California stations other than Station 1759 to take rest periods of at least 10 minutes at the mid-point of each 4-hour work period (insofar as practicable)?

17. During her employment at Chevron, did Plaintiff fail to take rest breaks of at least 10 minutes at the mid-point of each 4-hour work period? If so, which rest breaks did she miss, why did she miss them, and would it have been practicable for her take them?

18. During the alleged class period, did other employees at Station 1759 fail to take rest periods of at least 10 minutes at the mid-point of each 4-hour work period? If so, which employees missed them, which rest breaks did they miss, why did they miss them, and would it have been practicable for them to take the rest breaks they missed?

19. During the alleged class period, did any or all of the approximately 15,000 other employees in the putative class fail to take rest periods during any or all of the alleged class periods? If so, which employees missed them, which rest breaks did they miss, why did they miss them, and would it have been practicable for them to take the rest breaks they missed?

20. Were Plaintiff's experiences at Station 1759 with regard to rest periods typical of the experiences of others who worked at the approximately 300 other Chevron stations in California during any or all of the alleged class period?

21. At any time during the alleged class period, did Chevron have a policy of not compensating any or all of its non-exempt California employees for all time worked?

22. Did Plaintiff accurately record her time on her time card? If not, why not?

23. Did non-exempt employees other than Plaintiff at Station 1759 accurately record time worked on their time cards at all times during the class period? If not, why not?

24. Did any or all of the approximately 15,000 class members who worked at in California at Chevron stations other than Station 1759 accurately record time worked on their time cards at all times during the class period? If not, why not?

25. At any time during the alleged class period, did Chevron fail to pay at least the California minimum wage for all hours worked by Plaintiff? If not, why not?

26. At any time during the alleged class period, did Chevron fail to pay at least the federal minimum wage for all hour worked by Plaintiff? If not, why not?

27. At any time during the alleged class period, did Chevron have a policy of not paying all overtime compensation earned by its non-exempt California employees pursuant to state and/or federal law?

28. Did Plaintiff fail to receive compensation for all overtime hours worked under state and/or federal law? If so, how much overtime compensation is due and why did Chevron fail to pay all overtime compensation due?

29. At any time during the alleged class period, did Chevron fail to pay overtime compensation as required by California Labor Code § 510 to any of the approximately 15,000 members of the putative class? If so, which ones, how much overtime compensation was due, and, with respect to each one, why did Chevron fail to pay all overtime compensation due?

30. At any time during the alleged class period, did Chevron fail to pay overtime compensation as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, to any of the approximately 15,000 members of the putative class? If so, which ones, how much overtime compensation was due, and, with respect to each one, why did Chevron fail to pay all overtime compensation due?

31. At any time during the alleged class period, did Chevron fail to pay overtime wages to Plaintiff or others as required by California Labor Code §§ 204, 514, and/or 1194 (*see* Complaint, ¶ 27).

32. At any time during the alleged class period, did Chevron have a policy of not paying all wages due at termination of employment in accordance with the requirements of California Labor Code §§ 201 and 202?

33. Did Plaintiff fail to receive all wages due upon termination of employment at the time proscribed by California Labor Code § 201? If so, was the non-payment willful or, instead, was it the result of a "good faith" dispute that any wages were due?

34. At any time during the alleged class period, did Chevron fail to pay all wages due to any involuntarily terminated employee other than Plaintiff at the time proscribed by California

LAI-2930576v1

5

Labor Code § 201? If so, which involuntarily terminated employee(s) failed to receive all wages due at termination and, with respect to each one, was the non-payment willful or, instead, was it the result of a "good faith" dispute that any wages were due?

35. At any time during the alleged class period, did Chevron fail to pay all wages due to any employee who voluntarily resigned at the time proscribed by California Labor Code § 202 (which requires employers to pay employees who resign all wages due not later than 72 hours after they resign, unless they gave at least 72 hours advance notice of the intention to resign, in which case they are entitled to all wages due at the time of resignation)? If so, which employees who resigned did not receive all wages due in a timely manner and, with respect to each one, was the non-payment willful or, instead, was it the result of a "good faith" dispute that any wages were due?

**3.  Principal legal issues in dispute:**

1. Given the language of Wage Order 7 (permitting "on duty" meal periods when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job meal period is agreed to), if Plaintiff signed a written agreement waiving her right to take a 30-minute off-duty meal period when she worked alone at the gas station on the 8-hour graveyard shift, did Chevron violate California Labor Code § 226.7 by failing to provide an off-duty meal period for Plaintiff when she worked alone at the gas station on the 8-hour graveyard shift?

2. Is there a private right to sue for an alleged violation of California Labor Code §§ 204, 226, 226.7, 510, and/or 512, or do California Labor Code § 98 and the Labor Code Private Attorneys General Act, Cal. Lab. Code §§ 2699, *et seq.* ("LCPAGA") provide an employee's exclusive remedy for alleged violations of those statutes?

3. Does California law require Defendant to provide a 30-minute meal period for each 5-hour shift?

4. Does California Labor Code § 226.7 (requiring employers to pay extra wages if they fail to "provide" a meal period as required by an applicable Wage Order) authorize a court to award extra wages to an employee who was authorized and permitted to take a meal period, but

chose not to take it? *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007) (Judge Walker held that an employer provides a meal period if it "offers" it; California law does not require employers to ensure that workers take meal breaks).

5. Does California Labor Code § 226.7 (requiring employers to pay extra wages if they fail to "provide" a rest period as required by an applicable Wage Order) authorize a court to award extra wages to an employee who was authorized and permitted to take rest periods, but chose not to take them. *Id.*

6. Did the paystubs Chevron provided to any or all of its California employees during the pay periods at issue in this case fail to comply with the requirements of California Labor Code § 226? If so, which ones failed to comply and in which way(s) did they fail to comply?

7. In light of the fact that her employment at Chevron was involuntarily terminated, does Plaintiff have standing to seek waiting time penalties pursuant to California Labor Code § 203 for employees who voluntarily resigned?

8. In light of the fact that her employment at Chevron was involuntarily terminated, does Plaintiff have standing to seek LCPAGA penalties for alleged violations of California Labor Code § 202 and/or § 203 for "aggrieved employees" who voluntarily resigned?

9. Do California Labor Code §§ 204, 514, and/or 1194 require employers to pay overtime compensation to employees, as alleged in paragraph 27 of the Complaint?

10. Can Plaintiff proceed with an LCPAGA claim based on alleged violations of California Labor Code §§ 201 and/or 1198, neither of which were mentioned in the letter her attorney sent to the California Labor & Workforce Development Agency?

11. Can Plaintiff recover both LCPAGA penalties and penalties under California Labor Code § 203 for an alleged violation of California Labor Code §§ 201, 202, and/or 203?

12. Can Plaintiff bring LCPAGA claims on behalf of allegedly "aggrieved employees" without satisfying the requirements of Rule 23 of the Federal Rules of Civil Procedure?

13. Can a FLSA 216(b) opt-in collective action proceed in the same case as a Rule 23 opt-out class action? *Compare Silverman v. Smithkline Beecham Corp.*, 2007 WL 3072274 (C.D. Cal. October 16, 2007) (permitting both kinds of claims to proceed in the same case); *Ellison v.*

*AutoZone, Inc.*, 2007 WL 2701923 (N.D. Cal. September 13, 2007) (same); *Baas v. Dollar Tree Stores, Inc.*, 2007 WL 2462150 (N.D. Cal. August 29, 2007) (same), with *Otto v. Pocono Health Sys.*, 457 F.Supp. 2d 522 (M.D. Pa. 2006) (granting motion to dismiss plaintiffs' Rule 23 state law class claims under Rule 12(b)(6) on grounds that Rule 23 opt-out state law class action claims could not proceed accompanied by a § 216(b) opt-in action), *Himmelman v. Continental Cas. Co.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss/strike plaintiff's Rule 23 class allegations because Rule 23 certification of state law claims is legally incompatible with FLSA claim); and *Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189 (D. N.J. Aug. 11, 2006) (granting defendant's Rule 12(b)(6) motion to dismiss Rule 23 class action allegations because they are incompatible with FLSA collective action).

14. Can a Rule 23 class action be certified in this case? *See, e.g., Blackwell v. Skywest Airlines*, 245 F.R.D. 453 (S.D. Cal. 2007) (unpublished decision denying motion for class certification in a wage and hour case because individual issues predominate over common issues).

15. Can a FLSA § 216(b) collective action be certified in this case, conditionally or otherwise?

**4.     The other factual issues which remain unresolved for the reasons stated below and how the parties propose to resolve those issues:**

Plaintiff seeks to file an amended complaint adding claims under the Labor Code Private Attorneys General Act, Cal. Labor Code §§ 2699, *et seq.* ("LCPAGA"). Chevron has no objection to the filing of an amended complaint that adds LCPAGA claims that were raised in Plaintiff's counsel's letter to the California Labor & Workforce Development Agency ("the "Agency"), but will not agree to the filing of an amended complaint making any other new claim(s) or making other changes to the Complaint.

The proposed First Amended Complaint drafted by Plaintiff is unacceptable to Chevron because, among other things, it adds DOE defendants, changes the end date of the class period,

adds claims for penalties pursuant to California Labor Code § 266.3 and § 558, and adds LCPAGA claims that were not identified in Plaintiff's counsel's letter to the Agency.

5. **The parties which have not been served and the reason:**

N/A.

6. **The additional parties that the below-specified parties intend to join and the intended time frame for such joinder:**

N/A

## CONSENT TO MAGISTRATE JUDGE FOR TRIAL

7. **The parties consent to the assignment of this case to a United States Magistrate Judge for jury trial.**

## ALTERNATIVE DISPUTE RESOLUTION

8. **The parties have agreed to the following ADR process:** United States Magistrate.

9. **The ADR process to which the parties jointly request referral:** United States Magistrate.

## DISCLOSURES

10. **The parties certify that they have made the following disclosures:** Both parties served their initial disclosures on February 19, 2008.

## DISCOVERY & MOTIONS

11. **The parties agree to the following discovery plan:**

　　Class Discovery:

　　Discovery Limits
　　Depositions:    Pltf.: 30; Def.: 30
　　Interrogs:      Pltf.: 50; Def.: 50
　　Doc. Req.:      Pltf.: 100; Def.: 100
　　Req. Adm.:      Pltf.: 50; Def.: 50

(According to Federal Rules of Civil Procedure and Local Rules, subject to any provisions below)

　　**Non-Expert Discovery Cut-off**: October 1, 2008

　　**Designation of Experts**:
　　Pltf.: October 1, 2008;
　　Def.: October 31, 2008
　　(Parties shall conform to Fed.R.Civ.P. 26(a)(2))

**Expert Discovery Cut-Off:** January 30, 2009

**Trial Discovery:** TBD

**Motion to Conditionally Certify FLSA Section 216(b) Collective Action Due:** April 1, 2008

**Motion to Certify Rule 23 Class Due:** February 15, 2009

**Dispositive Motions – Last Day for Hearing:** TBD
(Shall be at least 90 days before pretrial conference date)

## TRIAL SCHEDULE

12. The parties request a trial date as follows: TBD

13. The parties expect that the trial will last for the following number of days: TBD

## SIGNATURE AND CERTIFICATION BY PARTIES AND LEAD TRIAL COUNSEL

Pursuant to Civil L.R. 16-12, each of the undersigned certifies that he or she has read the brochure entitled "Dispute Resolution Procedures in the Northern District of California," discussed the available dispute resolution options provided by the court and private entities and has considered whether this case might benefit from any of the available dispute resolution options.

Dated: February 19, 2008

_____
Deborah C. Saxe
Lead Counsel for Defendant Chevron Stations, Inc.

_____
Alan Harris
Lead Counsel for Plaintiff Catherine Tremblay