1   Alan Harris (SBN 146079)
    David Zelenski (SBN 231768)
2   HARRIS & RUBLE
    5455 Wilshire Boulevard, Suite 1800
3   Los Angeles, CA 90036
    Telephone: (323) 931-3777
4   Facsimile: (323) 931-3366

5   Attorneys for Plaintiff

6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  CATHERINE TREMBLAY,                    Case No. CV 07-6009 EDL
    individually and on behalf of all
    others similarly situated,             PLAINTIFF'S MEMORANDUM
12                                         REGARDING BRIEFING SCHEDULE
                                           FOR MOTION FOR CERTIFICATION
13              Plaintiff,                 OF COLLECTIVE ACTION

14        v.                               Date:  N/A
                                           Time:  N/A
15  CHEVRON STATIONS, INC., and
    DOE ONE through and including          *Assigned to Hon. Elizabeth D. LaPorte*
16  DOE TEN,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.    Introduction:  The Issue to be Decided..........................................................    1

II.   The Law Applicable to a Request for Certification:  Only a Modest Showing

      Needs to Be Made..........................................................................................    2

III.  Conclusion.....................................................................................................    3

# TABLE OF AUTHORITIES

**Cases**

Alba v. Papa John's USA,
2007 U.S. Dist. LEXIS 28079 (C.D. Cal. 2007)..................................................12

Bayles v. Am. Med. Response,
950 F. Supp. 1053 (D. Colo. 1996)........................................................... 8

Blackie v. Barrack,
524 F.2d 891 (9th Cir. 1975)...................................................12-14, 16

Bureerong v. Uvawas,
922 F. Supp. 1450 (C.D. Cal. 1996)........................................... 10

Caridad v. Metro-North Commuter R.R.,
191 F. 3d 283 (2d Cir. 1999)..................................... 16

Castle v. Wells Fargo Financial, Inc.,
2008 WL 495705 (N.D. Cal. Feb. 20, 2008).....................................2, 7

Dukes v. Wal-Mart, Inc.,
222 F.R.D. 189 (N.D. Cal. 2004)........................................................15

Dukes v. Wal-Mart, Inc.,
474 F.3d 1214 (9th Cir. 2007)........................................ 14-18

Edwards v. City of Long Beach,
467 F.Supp.2d 986 (C.D. Cal. 2006)...........................................................9

Eisen v. Carlisle and Jacquelin,
417 U.S. 156 (1974)..................................................12-16

Grayson v. K Mart Corp.,
79 F.3d 1086 (11th Cir. 1996).............................................6

Hoffman-La Roche, Inc. v. Sperling,
493 U.S. 165 (1989)...........................................7-8

In re Visa Check/MasterMoney Antitrust Litig.,
280 F.3d 124 (2d Cir. 2001)..........................................................................16-17

Johnson v. TGF Precision Haircutters, Inc.,
319 F. Supp. 2d 753 (S.D. Tex. 2004)................................................................10

Leuthold v. Destination Am.,
224 F.R.D. 462, 467 (N.D. Cal. 2004)..................................................................9

L.H. v. Schwarzenegger,
2007 U.S. Dist. LEXIS 18728, 2007 WL 662463 (E.D. Cal. 2007)...............17

Murphy v. Kenneth Cole Productions,
40 Cal. 4th 1094 (2007)..................................................................................... 6

Osmer v. Aerospace Corp.,
1982 U.S. Dist. LEXIS 15927, 1982 WL 488 (C.D. Cal. 1982).................13-14

Pendlebury v. Starbucks Coffee Co.,
2005 U.S. Dist. LEXIS 574 (S.D. Fl. 2005)....................................................10-11

Realite v. Ark Rests. Corp.,
7 F. Supp. 2d 303 (S.D.N.Y. 1998)................................................................8, 11

Selzer v. Bd. of Educ. of City of New York,
112 F.R.D. 176 (S.D.N.Y. 1986)........................................................................15

St. Marie v. Eastern R.R. Ass'n.,
72 F.R.D. 443 (S.D.N.Y. 1976)...........................................................................7

Thiessen v. G.E. Elec. Capital Corp.,
267 F.3d 1095 (10th Cir. 2001)........................................................................ 9

Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,
209 F.R.D. 159 (C.D. Cal. 2002).......................................................................15

Wang v. Chinese Daily News, Inc.,
231 F.R.D. 602 (C. D. Cal. 2005) ......................................................................7

<u>Wynn v. NBC</u>,
234 F.Supp.2d 1067 (C.D. Cal. 2002) ................................................9

**Statutes**

California Code of Civil Procedure § 382.........................................8

Federal Rules of Civil Procedure, Rule 23........................................6, 8, 12-17

29 U.S.C. § 207............................................................................ 3

29 U.S.C. § 216(b).......................................................................6-10

29 U.S.C. § 626(b)........................................................................8

*I.    **Introduction:  The Issue to be Decided.***

Defendant Chevron Stations, Inc. ("Chevron") has requested an extended briefing schedule in connection with Plaintiff's motion for certification of a collective action. The Court should deny Chevron's request and instead should promptly resolve certification of this case as a collective action as to the Fair Labor Standards Act ("FLSA") claim for relief asserted in the Complaint.  The Complaint's fifth claim for relief states a claim pursuant to the FLSA for the nonpayment of overtime wages.  Under the FLSA:

> [A]n action commenced on or after the date of the enactment of this Act . . . under the Fair Labor Standards Act of 1938 . . . shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938 . . . it shall be considered to be commenced in the case of any individual claimant—(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.  Accordingly, the statute of limitations for the alleged FLSA violations is still running,[1] and the delay contemplated by Defendant risks jeopardizing the claims of the putative Collective-Action Members.  For that reason, and for the reasons articulated below, Defendant's request should be denied.[2]

Plaintiff and the putative Collective-Action Members were not paid the full overtime owing to them.  The Court should certify a collective action for employees

---

[1] The statute of limitations under the FLSA is two or three years, depending on whether the violations are willful.  29 U.S.C. § 255.

[2] If the Court is amenable to Defendant's request, the Court should at least toll the statute of limitations during the period of time set aside for extended briefing.

1  whose overtime was underpaid due to Chevron's failure to compute properly the correct

2  overtime rate for those who worked the "graveyard" shift.  Unlike Judge Illston's recent

3  opinion, which opinion dealt with off-the-clock allegations in an FLSA case,[3] the present

4  action has a much more straightforward violation.  Here, individual differences among

5  Chevron's employees are limited solely to readily quantifiable amounts owing on

6  account of overtime miscalculated at an incorrectly low rate.  In other words, for

7  purposes of the forthcoming Motion for Certification of a Collective Action, there is no

8  dispute with respect to the number of uncompensated overtime hours; instead, there is

9  only dispute as to the base hourly rate to be used in computing the unpaid overtime

10  wages.

11       Chevron miscalculates and understates its employees' base rate of pay for

12  employees who, like Plaintiff, work the night shift and are paid a shift differential.  The

13  miscalculation results in the payment of an incorrect overtime wage for those employees.

14  For example, on March 1, 2007, Plaintiff worked 8.5 hours during a night shift.  A copy

15  of her "in station time sheet" and of her pay stub are attached as Exhibits 1 and 2,

16  respectively, to the Declaration of Alan Harris filed herewith ("Harris Declaration").

17  Plaintiff's overtime payment for this shift was computed by multiplying $8.50—her

18  daytime rate of pay—by 1.5.  This is not the proper formula.

19       The FLSA states:

20       [N]o employer shall employ any of his employees who in any workweek is

21       engaged in commerce or in the production of goods for commerce, or is

22       employed in an enterprise engaged in commerce or in the production of

23       goods for commerce, for a workweek longer than forty hours unless such

24       employee receives compensation for his employment in excess of the hours

25       above specified at a rate not less than one and one-half times the regular rate

26       at which he is employed.

27

28  [3] Castle v. Wells Fargo Fin., Inc., 2008 WL 495705 (N.D. Cal. Feb. 20, 2008).

29 U.S.C. § 207(a)(1).  The FLSA defines "regular rate":

> As used in this section the "regular rate" at which an employee is employed
> shall be deemed to include all remuneration for employment paid to, or on
> behalf of, the employee . . . .

Id. § 207(e).  As explained above, in the situation presently before the Court, Plaintiff variously worked day and night shifts, and her pay was subject to a differential:  Her daytime rate was $8.50 per hour, and her nighttime rate was $9.00 per hour.  Clearly, both her daytime earnings and her nighttime earnings fall within the FLSA's definition of "regular rate."  See Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945) ("[T]he regular rate refers to the hourly rate *actually* paid the employee for the normal, non-overtime workweek for which he is employed.") (emphasis supplied).  See also Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 468–69 (2001) ("Where an employee receives a higher wage or rate because of undesirable hours or disagreeable work, such wage represents a shift differential or higher wages because of the character of work done or the time at which he is required to labor rather than an overtime premium.  Such payments enter into the determination of the regular rate of pay.").  Accordingly, her nighttime rate needs to figure into the overtime-rate calculus.

This is the approach adopted by the Code of Federal Regulations.  According to the Code of Federal Regulations, "[t]he general overtime pay standard in section 7(a) [29 U.S.C. § 207] requires that overtime must be compensated at a rate of not less than one and one-half times the regular rate at which the employee is actually employed."  29 C.F.R. § 778.107.  The Code of Federal Regulations goes on to state:

> The "regular rate" under the Act is a rate per hour.  The Act does not require
> employers to compensate employees on an hourly rate basis; their earnings
> may be determined on a piece-rate, salary, commission, or other basis, but in
> such case the overtime compensation due to employees must be computed
> on the basis of the hourly rate derived therefrom and, therefore, it is
> necessary to compute the regular hourly rate of such employees during each

workweek . . . .  The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

Id. § 778.108.  Moreover:

Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates.  That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

Id. § 778.115.  In Allen v. Bd. of Public Education, 495 F.3d 1306 (11th Cir. 2007), the court approved a blended-rate approach in the context of bus drivers who were compensated differently depending on the particular duties they were performing:

Bus drivers and aides earn straight time at the rate of pay applicable to the particular duty they are performing.  For example, if a driver drives a regular route for 25 hours in a week, and the driver's rate of pay for regular-route work is $11.00 an hour, he will earn $275.  If that driver also drives 15 hours of field trips during the same week, he will earn an additional $90 (15 hours × $6/hour).  If the driver also cleans his bus for 1 hour, drives an after-school route (taking students home following an after-school program) for 5 hours, and attends a safety-meeting for 2 hours, he will earn an additional 8 hours of work at the extended day rate of $7 an hour for a total of $56.  Therefore, in this example, the driver has worked a total of 48 hours in a week and earned a total of $21 straight time.

Because the driver in this hypothetical worked over 40 hours in the week, he is also entitled to 8 hours of overtime (or an additional 1/2 time).

The overtime rate of pay is based on the blended (or weighted) rate of pay. The total straight-time compensation ($421) is divided by the total hours worked (48) to determine the blended rate of pay at which to pay the overtime. In this example, the blended rate is $ 8.77. Because this driver has already been paid straight time (or 1 time) for those 8 hours, he is entitled to 1/2 of the blended rate ($4.39) for a total additional overtime compensation of $35.12.

Allen, 495 F.3d at 1310–11.

Applying these principles to Plaintiff, her correct overtime rate is calculated as follows: (($8.50 per hour × 24 hours) + ($9.00 per hour × 16 hours)) ÷ 40.5 total hours worked = $8.59 per-hour blended rate.[4] However, Plaintiff was paid at an overtime rate of only $8.50 per hour.

Plaintiff contends that all employees who worked graveyard shifts have had their undisputed overtime hours compensated at an artificially low level. *The problem is*

---

[4] This calculation does not take into consideration wages earned on account of work performed in lieu of meal periods and rest breaks. See infra at 5:14–6:5. Moreover, this calculation is only one possible way to incorporate Plaintiff's nighttime rate into determining her regular rate of pay. See, e.g., Burkhalter v. Sewerage & Water Bd., 791 So. 2d 665, 667–68 (La. Ct. App. 2000) (discussing different calculations that incorporate shift differentials). Arguably, Plaintiff is entitled to be paid an overtime rate based only on her $9.00 nighttime rate. According to the Code of Federal Regulations:

Extra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate and which would have been included in the regular rate of pay.

Example 1. An employee is paid on an hourly rate basis plus a production bonus, and also a shift differential of 10 cents for each hour worked on the second shift. The authorized basic rate under the agreement is the employee's daily average hourly earnings, and under the employment agreement he is paid one and one-half times the basic rate for all hours worked in excess of 8 each day. Suppose his production bonus is included in the computation of the basic rate, but the shift differential is not. In addition to overtime compensation computed at the basic rate the employee must be paid an extra 5 cents for each overtime hour worked on the second shift.

29 C.F.R § 548.502 (internal references omitted).

*further exacerbated in California, where Chevron failed to pay Plaintiff or putative Class Members the additional hour of wages owing to them on account of missed rest periods and meal breaks.* (See Compl. ¶¶ 26–27.) *As with the nighttime shift-differential wage, these wages also must be considered when computing the magnitude of overtime.*[5]

## II.    The Law Applicable to a Request for Certification:  Only a Modest Showing Needs to Be Made.

Collective actions under the FLSA are governed by 29 U.S.C. § 216(b).  The distinctive feature of a collective action, setting it apart from class actions under Rule 23 of the Federal Rules of Civil Procedure, is that the members of a collective action must affirmatively opt into the action in writing and thus become party plaintiffs.  29 U.S.C. § 216(b).  Party plaintiffs are entitled to the benefits of the action and will be bound by the result.  Persons who do not opt into the action do not become parties, will not share in the benefits, and will not be bound by the result.  The Court should set a routine schedule for briefing the issues so that prospective members of the collective action may affirmatively opt into the action.

Judge Illston recently summarized some of the applicable law:

> Section 216(b) of the FLSA provides that one or more employees may bring a collective action "on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."  Grayson v. K Mart Corp., 79 3d 1086, 1096 (11th Cir. 1996) (internal citation and quotation omitted), *cert. denied*, 519 U.S. 982 (1996).  Plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim of class-wide discrimination.  See id. at 1097.  "The plaintiffs may meet this burden, which is not heavy, by making substantial

---

[5] Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2007), establishes that these payments are, in fact, wages.

1    allegations of class-wide discrimination, that is, detailed allegations

2    supported by affidavits which successfully engage defendants' affidavits to

3    the contrary." Id. (internal citation and quotation omitted).

4    Castle v. Wells Fargo Fin., Inc., 2008 WL 495705 at *2 (N.D. Cal. Feb. 20, 2008).

5        In employment cases, individual actions, whether administrative or civil, are often

6    thwarted by employees' reluctance to challenge their employer. See Wang v. Chinese

7    Daily News, Inc., 231 F.R.D. 602, 614 (C.D. Cal. 2005) ("Proceeding by means of a

8    class action avoids subjecting each employee to the risks associated with challenging an

9    employer."); St. Marie v. Eastern R.R. Ass'n., 72 F.R.D. 443, 449 (S.D.N.Y. 1976) ("The

10   risks entailed in suing one's employer are such that the few hardy souls who come

11   forward should be permitted to speak for others when the vocal ones are otherwise fully

12   qualified."), rev'd on other grounds, St. Marie, 650 F.2d 395 (2d Cir. 1981).  Class and

13   collective actions in employment cases are thus viewed favorably.  This is especially true

14   given the remedial nature of the overtime laws at issue in this case.

15       Collective actions are governed by 29 U.S.C. § 216(b).  There are two

16   requirements for certifying a collective action.  First, the persons other than the named

17   plaintiffs whose claims are to be asserted collectively must be "similarly situated" with

18   the named plaintiff.  Second, these persons must give their consent in writing.  The

19   statute permits maintaining against an employer in any federal or state court of

20   competent jurisdiction suits brought by employees by "any one or more employees for

21   and in behalf of himself or themselves and other employees similarly situated."  29

22   U.S.C. § 216(b).  "No employee shall be a party Plaintiff to any such action unless he

23   gives his consent in writing to become such a party and such consent is filed with the

24   court in which such action is brought." Id.

25       The U.S. Supreme Court has held that courts are authorized to supervise the

26   contents of the notice to be sent to the absent parties and that discovery of the identity of

27   such absent parties is authorized. Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165,

28   / / / / /

169–70, 172–73 (1989).[6]  Implicit in the <u>Hoffman-La Roche, Inc.</u> opinion is the fundamental proposition, mandated by the statutory language, that a collective action is distinct and different from the various forms of class actions for which provision is made in Rule 23 of the Federal Rules of Civil Procedure and section 382 of the California Code of Civil Procedure.

There is substantial federal authority for the proposition that the "similarly-situated" requirement is met by a "modest factual showing" that "requires nothing more than substantial allegations that putative class members were victims together of a single decision, policy or plan." <u>Realite v. Ark Rests. Corp.</u>, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998); <u>Bayles v. Am. Med. Response</u>, 950 F. Supp. 1053, 1066 (D. Colo. 1996).  A majority of district courts, including those in the Ninth Circuit, utilize a two-tiered process.  <u>See</u>, <u>e.g.</u>, <u>Lemus v. Burnham Painting & Drywall Corp.</u>, 2007 LEXIS 46785 at *15–16 (D.C. Nev. 2007) ("The court finds that plaintiffs' complaint allegations, coupled with their declarations which aver they regularly worked in excess of forty hours per week without overtime pay compensation, and that all of the painters with whom they worked, worked similar hours and were not paid overtime, meet the plaintiffs' threshold burden.  For purposes of the first tier of the two-tier analysis, plaintiffs have established they are similarly situated to other plaintiffs employed by Burnham and Centennial for purposes of Section 216(b) conditional certification and notice.  Plaintiffs have made substantial allegations that defendants Burnham and Centennial had a policy or plan which deprived the plaintiffs of overtime pay in violation of the FLSA.  The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees for purposes of the FLSA, and detailed analysis of whether the plaintiffs are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed.  Once discovery has been completed, the defendants may move to decertify the collective

---

[6] The cited case was one arising under the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), but that statute, as emphasized throughout the opinion, expressly borrows the collective-action mechanism found in 29 U.S.C. § 216(b).

1  action class on a fully developed record."); <u>Edwards v. City of Long Beach</u>, 467 F. Supp.

2  2d 986, 990 (C.D. Cal. 2006) ("The Court follows the majority approach and applies a

3  two-step approach for determining whether certification of a § 216(b) collective action is

4  appropriate."); <u>Leuthold v. Destination Am.</u>, 224 F.R.D. 462, 467 (N.D. Cal. 2004)

5  (proceeding under two-tiered analysis, "given that the majority of courts have adopted

6  it"); <u>Wynn v. NBC</u>, 234 F. Supp. 2d 1067, 1082–84 (C.D. Cal. 2002) (same).

7      Courts adhering to this approach make "two determinations, on an ad hoc, case-

8  by-case basis." <u>Id</u>. at 1082.  At the initial "notice stage," the court decides whether a

9  class should be certified based on the pleadings, affidavits, and other evidence in the

10  record.[7]  "Due to the minimal evidence at the court's disposal, this determination is made

11  based on a fairly lenient standard, and typically results in a 'conditional certification' of

12  a representative class." <u>Id</u>.  The court then proceeds to authorize and monitor the

13  issuance of 'notice' to prospective members. <u>Id</u>.

14      A second, more rigorous review is undertaken after the plaintiff has propounded

15  discovery, usually on a motion for decertification by the defendant.  Here, the court

16  weighs several factors in determining whether the collective plaintiffs are "similarly

17  situated." <u>Id</u>.  In addition to the fruits of discovery, the court considers (1) whether a

18  sufficient link exists between the alleged policy and the challenged employer actions, (2)

19  whether individual issues would predominate at trial; and (3) whether a trial of the action

20  could be coherently managed and evidence could be presented in a manner that would

21  not confuse the jury or unduly prejudice any party. <u>Id</u>. at 1084 (citing <u>Thiessen v. G.E.</u>

22  <u>Elec. Capital Corp.</u>, 267 F.3d 1095, 1103 (10th Cir. 2001).  The inquiry into whether

23  proposed class members are similarly situated is necessarily fact-specific. <u>Id</u>. at 1081.

24      Here, Plaintiff is similarly situated vis-à-vis members of the collective action in

25  that (a) Plaintiff and the putative Collective-Action Members were employed by

26  Defendant, (b) Plaintiff and the putative Collective-Action Members were non-exempt

27

28      [7] Judge Illston's decision in <u>Wells Fargo Financial, Inc.</u> was obviously made after
extensive discovery was concluded.  It is aberrational in that respect.

1  employees, and (c) Defendant did not properly pay Plaintiff and the putative Collective-

2  Action Members overtime wages because Defendant failed to use the appropriate base

3  hourly rate, failed to consider either shift differentials or the additional wages that accrue

4  when an employee works through a meal period or rest break. "[T]he federal FLSA . . .

5  is remedial in nature and must be 'liberally construed.'" <u>Bureerong v. Uvawas</u>, 922 F.

6  Supp. 1450, 1469 (C.D. Cal. 1996). Accordingly, this action is maintainable as an opt-in

7  collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime wages,

8  liquidated damages, costs, and attorney's fees under the FLSA.

9       <u>Johnson v. TGF Precision Haircutters, Inc.</u>, 319 F. Supp. 2d 753 (S.D. Tex. 2004),

10  contains a condensed but broad-ranging overview of the law applicable to certifying

11  collective actions. The opinion discusses the two-stage approach. <u>Johnson</u>, 319 F. Supp.

12  2d at 754. In this approach, the first stage consists of a judicial determination, based on

13  the pleadings and affidavits, as to whether notice should be given to absent class

14  members. <u>Id.</u> The test employed to make this initial determination as to whether the

15  similarly-situated criterion has been met is a lenient one, usually resulting in a

16  "conditional certification" of the class. <u>Id.</u> at 754–55. The court then supervises the

17  giving of notice to the potential members of the collective action and may properly order

18  discovery that is necessary to ascertain the identity and location of such members. <u>Id.</u>

19  Following this, typically after the close of discovery, the defendants may move for

20  decertification. <u>See id.</u> At this second stage, the court makes a factual determination,

21  based on evidence including the fruits of discovery, as to whether the similarly-situated

22  test has been met. <u>Id.</u> If it determines that the class members are similarly situated, then

23  the action proceeds as a representative or collective action. <u>Id.</u> If not, the court

24  dismisses the opt-in plaintiffs <i>without prejudice</i> and allows the class representatives to

25  proceed to trial on their individual claims. <u>Id.</u>

26       Plaintiff submits that the two-stage procedure described in <u>Johnson</u> is a common-

27  sense approach that safeguards the essential rights and interests of all concerned. The

28  two-stage approach was followed in <u>Pendlebury v. Starbucks Coffee Co.</u>, 2005 U.S. Dist.

LEXIS 574 (S.D. Fla. 2005), with that court following the "fairly lenient standard" and granting conditional certification of a representative FLSA class. <u>Pendlebury</u> at *8. Chevron failed to use the appropriate base hourly rates when computing overtime rates payable to its employees. Chevron also failed to include wages earned on account of missed meal and rest breaks. This satisfies the similarly-situated test as recited in cases such as <u>Realite</u>. Accordingly, the Court should issue an order conditionally certifying this case as a collective action insofar as the FLSA counts are concerned. Following such conditional certification, Defendant should be required to disclose, to the extent that such data have not already been disclosed, the identities and last known addresses of each of the persons, other than the named Plaintiff herein, who worked for it. This Court should then approve a form of notice that contains a concise description of the litigation and that specifically advises the recipient that he or she will not be included in the action unless he or she executes an "opt-in" form.

When the identities of the "opt-ins" have been established, the case should then proceed as a collective action through discovery on the merits. The defense will, of course, have the right to make a motion to decertify at an appropriate time. Again, if such a motion is granted, the action is dismissed *without prejudice* as to the "opt-ins." If the motion is denied, then the action will proceed to final disposition as to the "opt-ins" and Plaintiffs. The evidence will demonstrate that Defendant hired Plaintiff and the putative Collective-Action Members to work for it but that Defendant did not properly compensate them. All who were underpaid should be entitled to their share of their damages under the FLSA.

Proceeding in the fashion suggested avoids a multiplicity of lawsuits, which is of benefit to the Court and to all parties. It avoids the risk that unpaid current and former employees may, being ignorant of their rights and without sufficient economic means to undertake the litigation on their own, lose all rights to collect the damages and penalties to which they are entitled. Finally, because the procedure requires that each current or former employee affirmatively opt into the litigation in writing, the parties and the Court

1  will know with considerable certainty just how many claimants are involved very soon

2  after the deadline for opting in has expired.

3      In determining to certify the requested collective action, this Court should not

4  make deep inquiry into substantive evidentiary issues.  There is no need for a prolonged

5  briefing schedule and intense discovery.  The first major Supreme Court case to address

6  this issue was Eisen v. Carlisle and Jacquelin, 417 U.S. 156 (1974).  In Eisen, the district

7  court determined that the Rule 23 class-certification requirements had been satisfied.  Id.

8  at 161.  In determining which party should bear the cost of providing notice to the class,

9  the district court reasoned that it was unfair to impose the cost of notice on the

10  defendants unless the plaintiffs showed a probability of success on the merits.  Id. at

11  167–68.

12      The Supreme Court reversed, holding that the plaintiffs were required to bear the

13  cost of notice to the class because it found "nothing in either the language or history of

14  Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits

15  of a suit in order to determine whether it may be maintained as a class action."  Id. at

16  177.  Additionally, the Court reasoned that a preliminary inquiry into the merits was

17  improper because it would provide the plaintiffs with a determination on the merits

18  "without any assurance that a class action may be maintained" and so might "color the

19  subsequent proceedings" and "place an unfair burden on the defendant."  Id. at 177–78.

20  See also, e.g., Alba v. Papa John's USA, 2007 U.S. Dist. LEXIS 28079 at *14 (C.D. Cal.

21  2007) ("In deciding a motion to certify a class, the court may not evaluate whether the

22  plaintiff is likely to prevail on the merits of the stated claims.") (citing Eisen, 417 U.S. at

23  177–78).

24      In Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975), the Ninth Circuit established

25  its standard concerning a district court's evaluation of the Rule 23 factors:

26      The court is bound to take the substantive allegations of the complaint as

27      true, thus necessarily making the class order speculative in the sense that the

28      plaintiff may be altogether unable to prove his allegations.  While the court

1    may not put the plaintiff to preliminary proof of his claim, it does require

2    sufficient information to form a reasonable judgment.  Lacking that, the

3    court may request the parties to supplement the pleadings with sufficient

4    material to allow an informed judgment on each of the Rule's requirements.

5    Blackie, 524 F.2d at 901 n.17.  The Ninth Circuit also cited Eisen even though Blackie

6    involved a determination of the Rule 23 requirements rather than the apportionment of

7    the cost of providing notice to class members:

8        The Court made clear in Eisen [] that that determination does not permit or

9        require a preliminary inquiry into the merits, 417 U.S. at 177–178; thus the

10        district judge is necessarily bound to some degree of speculation by the

11        uncertain state of the record on which he must rule.  An extensive

12        evidentiary showing of the sort requested by defendants is not required.  So

13        long as he has sufficient material before him to determine the nature of the

14        allegations, and rule on compliance with the Rule's requirements, and he

15        bases his ruling on that material, his approach cannot be faulted because

16        plaintiffs' proof may fail at trial.

17    Id. at 901.

18        Blackie suggests that a district court may not resolve factual disputes.  For

19    example, Blackie mandates that a district court take the factual allegations as true.  Id. at

20    901 n.17.  Such an inference seems to bar a district court from resolving factual disputes

21    against the plaintiff so long as the plaintiff has alleged sufficient facts to create a dispute.

22    Additionally, Blackie precludes a district court from putting a plaintiff to preliminary

23    proof of his claim.  Id.  Finally, Blackie cites Eisen for the proposition that a court may

24    not make a preliminary inquiry into the merits.  Id. at 901.  This extension of Eisen

25    beyond the notice context suggests that the Ninth Circuit intended to preclude a

26    weighing of evidence at the class-certification stage.

27        One decision to address whether a court may resolve factual disputes is Osmer v.

28    The Aerospace Corp., 1982 U.S. Dist. LEXIS 15927 (C.D. Cal. 1982).  In Osmer, the

1   plaintiff alleged that the defendant had applied certain discriminatory policies on a class-

2   wide basis. Id. at *2. The plaintiff submitted affidavits and statistical studies based on a

3   regression analysis of data "on employee advancement and salary." Id. at *5 n.2. The

4   defendant submitted declarations "asserting that plaintiff's expert opinion is statistically

5   unsound, that management level personnel made their decisions in a non-discriminatory

6   manner, and affidavits of various female employees who claim they were not held back

7   by any policy of defendant." Id. at *10. The Court held that "[t]aking the

8   representations alleged by plaintiff in the complaint, and the statistical proof offered,

9   along with the affidavits, the plaintiff has presented common questions capable of

10  resolution in the context of a class suit." Id. The court observed that it was not ruling

11  "on whether the contrary affidavits of defendant are sufficient to prevail on the merits . . .

12  [but  instead] that, under the test mandated by Blackie, 524 F.2d at 901, the plaintiff has

13  shown that questions of fact which would be common to the whole class are presented by

14  the pleadings and material submitted." Id.

15      The Ninth Circuit recently issued an opinion that reiterates the general concept

16  that certification should not be a factually intensive process. In Dukes v. Wal-Mart, Inc.,

17  female Wal-Mart employees alleging sex discrimination brought a Title VII class action

18  against Wal-Mart. Dukes, 474 F.3d 1214 (9th Cir. 2007). The district court certified the

19  class for certain of the plaintiffs' claims, and the Ninth Circuit affirmed. Id.

20      One of the principal issues raised by Wal-Mart on appeal was whether the

21  plaintiffs had satisfied Rule 23(a)(2)'s commonality requirement by presenting evidence

22  that Wal-Mart engaged in discriminatory practices that affected all of the plaintiffs in a

23  common manner. Id. at 1225. To establish commonality, the plaintiffs submitted factual

24  evidence, expert opinions, expert statistical evidence, and anecdotal evidence. Id. For

25  example, the plaintiffs' expert sociologist explained that "Wal-Mart has and promotes a

26  strong corporate culture—a culture that may include gender stereotyping." Id. at 1226.

27  The plaintiffs' expert concluded "(1) that Wal-Mart's centralized coordination,

28  reinforced by a strong organizational culture, sustains uniformity in personnel policy and

1    practice; (2) that there are significant deficiencies in Wal-Mart's equal employment

2    policies and practices; and (3) that Wal-Mart's personnel policies and practices make pay

3    and promotion decisions vulnerable to gender bias." Id.

4         Wal-Mart argued that the expert's third conclusion was vague, imprecise, and

5    failed to satisfy Daubert.  However, the district court rejected Wal-Mart's argument,

6    explaining that Wal-Mart's challenges "'are of the type that go to the weight, rather than

7    the admissibility, of the evidence.'" Id. at 1227 (quoting Dukes v. Wal-Mart, Inc., 222

8    F.R.D. 189, 191–92 (N.D. Cal. 2004)).  The Ninth Circuit agreed, explaining that "[t]he

9    district court was on very solid ground here as it has long been recognized that

10   arguments evaluating the weight of evidence or the merits of a case are improper at the

11   class certification stage." Id. (citing Eisen, 417 U.S. at 177 ("[W]e find nothing in either

12   the language or history of Rule 23 that gives a court any authority to conduct a

13   preliminary inquiry into the merits of a suit  in order to determine whether it may be

14   maintained as a class action."); Selzer v. Bd. of Educ. of City of New York, 112 F.R.D.

15   176, 178 (S.D.N.Y 1986) ("A motion for class certification is not the occasion for a

16   mini-hearing on the merits.")).  The Ninth Circuit also stated that "courts need not apply

17   the full Daubert 'gate-keeper' standard at the class certification stage." Dukes, 474 F.3d

18   at 1227.  "Rather, 'a lower Daubert standard should be employed at this [class

19   certification] stage of the proceedings.'" Id. (quoting Thomas & Thomas Rodmakers,

20   Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 162 (C.D. Cal. 2002)).

21        Similarly, the plaintiffs' expert statistician presented statistical evidence of class-

22   wide discrimination based on data collected at a regional level. Dukes, 474 F.3d at 1228.

23   Wal-Mart claimed that "the district court erred by not finding Wal-Mart's statistical

24   evidence more probative than the plaintiffs' evidence because, according to Wal-Mart,

25   its analysis was conducted store-by-store" rather than at a regional level. Id. at 1229.

26   The Ninth Circuit rejected Wal-Mart's argument that class certification should not have

27   been granted because Wal-Mart's statistical evidence was more probative:

28        [O]ur job on this appeal is to resolve whether the "evidence is sufficient to

1   demonstrate common questions of fact warranting certification of the

2   proposed class, not whether the evidence ultimately will be persuasive" to

3   the trier of fact. In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d

4   124, 135 (2d Cir. 2001).  Thus, it was appropriate for the court to avoid

5   resolving "the battle of the experts" at this stage of the proceedings.  See,

6   Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 292–293 (2d Cir.

7   1999) (noting that a district court may not weigh conflicting expert evidence

8   or engage in "statistical dueling" of experts).

9   Dukes, 474 F.3d at 1229.

10          Thus, Dukes appears to have established three propositions. First, the Dukes

11  majority explains that challenges to expert opinions constitute merits determinations that

12  go to the weight of the evidence rather than admissibility. Id. at 1227.  Thus, a district

13  court is not permitted to discount the testimony of a plaintiff's expert merely because the

14  defendant has challenged some aspect of the expert's opinion. Id.  Second, Dukes

15  extended the holding of Eisen to determinations involving Rule 23 requirements. Id.  As

16  discussed above, numerous courts have extended Eisen beyond its original holding,

17  including the Ninth Circuit in Blackie.  Finally, the Dukes majority held that a court may

18  not weigh conflicting evidence in determining whether the Rule 23 requirements have

19  been satisfied. Id. at 1229.  Where both plaintiffs and defendants have proffered expert

20  testimony, the court must avoid resolving a "battle of the experts" in a motion for class

21  certification. Id.  Therefore, at a minimum, Dukes establishes that a court may not

22  resolve factual conflicts concerning expert opinions in a motion for class certification.

23  Read more broadly, Dukes could be interpreted as holding that a district court may not

24  resolve any factual disputes in determining whether the Rule 23 requirements are

25  satisfied.

26          Such a reading of Dukes is essentially required in light of Dukes' reliance on the

27  Second Circuit cases of Caridad v. Metro-North Commuter R.R., 191 F.3d 283 (2d Cir.

28  1999) and In re Visa Check/Mastermoney Antitrust Litigation, 280 F.3d 124 (2d Cir.

1    2001).  The Ninth Circuit explicitly relied on In re Visa Check/ MasterMoney Antitrust

2    Litigation in concluding that a court should determine whether "'evidence is sufficient to

3    demonstrate common questions of fact warranting certification of the proposed class, not

4    whether the evidence ultimately will be persuasive' to the trier of fact." Dukes, 474 F.3d

5    at 1229 (quoting in re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 135).  Even

6    if Dukes does not implicitly adopt the "fatal flaw" standard, its reliance on In re Visa

7    Check/MasterMoney Antitrust Litigation establishes that a court cannot deny a motion

8    for class certification simply because experts disagree over the proper methodology.  A

9    plain reading of Dukes, then, clearly demonstrates that the Ninth Circuit intended to

10   prohibit district courts from weighing conflicting evidence when determining whether

11   the Rule 23 requirements have been satisfied.

12        In L.H. v. Schwarzenegger, 2007 U.S. Dist. LEXIS 18728 (E.D. Cal. Feb. 28,

13   2007), plaintiff juvenile parolees alleged that California has a policy and practice of

14   denying class members with disabilities their statutory rights under the Americans with

15   Disabilities Act.  The defendants argued that the class plaintiffs were not in fact disabled

16   and that, therefore, neither of the plaintiffs satisfied the typicality requirement. Id. at

17   *12.  In support of their position, the defendants submitted educational records of the

18   plaintiffs. Id.

19        The district court noted that, "although the allegations in the complaint must be

20   taken as true for the purposes of class certification, the court is 'at liberty' to consider

21   evidence that relates to the merits if such evidence also goes to the requirements of Rule

22   23." Id. at *26 (internal citations omitted).  However, the district court went on to reject

23   the defendants' argument that the plaintiffs were not typical because the plaintiffs were

24   not in fact disabled. Id. at *34–39.  The court explained that "arguments evaluating the

25   weight of evidence or the merits of a case are improper at the class certification stage"

26   and "plaintiffs need only provide sufficient information for the court to form a

27   reasonable judgment about whether plaintiffs' claims are typical." Id. at *37 (quoting

28   Dukes, 474 F.3d at 1227)).  The court concluded that, "[i]n examining the allegations set

forth in the complaint, as well as the evidence submitted by both plaintiffs and
defendants, the court finds that there is sufficient information to conclude that plaintiffs'
claims are typical of the class." Id. at *37.

**III.    Conclusion.**

For the foregoing reasons, the Court should hear the motion for certification on a
normal briefing schedule.


DATED:  February 28, 2008                          HARRIS & RUBLE

                                                    /s/
                                                   Alan Harris
                                                   *Attorneys for Plaintiffs*

PL.'S MEM. REGARDING BRIEFING SCHEDULE FOR MOT. FOR CERTIFICATION OF COLLECTIVE ACTION