EXHIBIT 1

**DECLARATION OF DR. ANDREW SAFIR**

**I, Dr. Andrew Safir**, declare as follows:

**Professional Experience**

1. I am the President of Recon Research Corporation, an economic consulting firm that I founded in 1980. I hold a Doctor of Philosophy degree in Economics from Tufts University. I also hold a Masters degree in Economics from Tufts University and a Bachelor of Arts degree in Psychology from the University of Colorado.

2. Prior to the founding of Recon Research, I held a variety of positions with the Federal and California governments. In 1972, I was appointed as a staff member to the President's Council of Economic Advisers specializing in international trade policy, and, in mid-1973, I joined the White House Council on International Economic Policy as a professional member specializing in finance. In 1974, I moved to the Department of Justice, where I served as the senior economic advisor to the Office of Justice Policy, Planning, and Research. In 1975, I was appointed as the Assistant Director of the Office of International Energy Policy at the U.S. Treasury. I left this position in 1978 to join the Administration of Governor Edmund G. Brown, Jr. as the Chief Business Economist for the State of California. However, I remained a special advisor to the U.S. General Accounting Office specializing in energy, international finance, and national security issues throughout much of the 1980s.

3. From my tenure as California's Chief Business Economist, and as President of Recon Research, I have developed extensive experience in analyzing employment

issues, including the evaluation of corporate employment packages and the compensation mechanisms, data collection, and reporting requirements which underlie the provision of labor services. In addition, I have provided expert economic testimony on these matters in both arbitration and court proceedings.

4. I also have experience in the economic requirements of class action litigation. During the past four years, I have been actively involved in one of California's largest antitrust class action suits. I have given expert testimony through deposition in that proceeding, and I have provided an expert declaration regarding the economic reasonableness of the settlement reached. I have also filed declarations in support of class settlements regarding California Labor Code violations during this time period. In addition, I have filed testimony and been deposed in proceedings which have opposed the formation of certain classes in California labor disputes.

5. A list of my testimony for courts before arbitration panels and in regulatory proceedings over the past four years is provided in Attachment 1. This Declaration is based upon my personal knowledge. If called as a witness, I could competently testify to the following:

**Opinions to Be Provided**

6. I was asked to review the violations of the Fair Labor Standards Act alleged by the potential collective action Plaintiff in this proceeding and to determine whether Defendant's payroll records would normally contain the data necessary to calculate the individual damages due Class Members from such violations. I was asked to determine whether the economic and damage issues in this case could be resolved efficiently on a class-wide basis. Finally, I have been engaged to provide

a declaration regarding Plaintiff's claims for civil penalties on behalf of the State of California Labor and Workforce Development Agency and other employees of Defendant pursuant to section 2699 of the California Labor Code.

7. In conducting my analysis and forming my opinions, I have examined and relied upon material provided by counsel.[1] I have also relied upon my economic training and experience, a summary of which has been provided in Paragraphs 1–5 above and Attachment 1, as well as upon discussions with Plaintiff's counsel.

**Background Information**

8. This case is a class action and collective action suit brought by the Plaintiff, Catherine Tremblay, on behalf of her fellow employees against their employer Chevron Stations, Inc. It appears that Defendant's primary business is to sell petroleum products at retail stores, located throughout California and the United States. In the First Amended Complaint, Plaintiff has alleged that Defendant violated certain parts of the California Labor Code, in particular, sections 203, 204, 226, 226.7, 510, 1194, and 2699, along with the Fair Labor Standards Act and the California Business and Professions Code.

9. Section 226(a) of the California Labor Code requires employers to furnish their employees with pay stubs containing certain pertinent information.[2] If this

---

1 Specifically, this material included the Complaint and the First Amended Complaint; portions of certain SEC filings of Defendant; portions of Defendant's web site; certain documents produced by Defendant, including printouts from Defendant's payroll system; and certain of Plaintiff's documents, including pay stubs.

2 The required information is comprised of the following: (a) name of the employee; (b) social security number; (c) gross wages earned; (d) total hours worked; (e) hourly wage rates and the corresponding number of hours worked at those rates; (f) all deductions; net wages; (g) inclusive dates of the period for

information is not provided as required, section 226(e) dictates that employees who have suffered "injury as a result of a knowing and intentional failure to comply" with Section 226(a) can recover the greater of (1) damages or (2) $50 for the initial violation and $100 for each subsequent violation, subject to a maximum amount of $4,000. Under section 2699(f), civil penalties are owing on account of Defendant's pay-stub violations:

> For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows:
>
> . . . .
>
> (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

10. Section 201(a) of the California Labor Code requires that wages earned and unpaid at the time of discharge are due and payable immediately upon discharge. Section 203 states that a willful failure to pay results in a penalty equal to the wages of the employee for up to a month or until the employer pays. Upon violation, section 2699 also calls for civil penalties that can be collected on behalf of the state in private employee actions, as here.

---

which employees is paid; and (h) name and address of employer. In this case, it appears that Defendant systematically failed to provide certain employees with total hours worked, correct gross and net wages

11. Section 512 of the California Labor Code requires that, if an employee is employed for at least five hours, his or her employer must provide him or her with a thirty-minute meal period. Section 226.7 of the California Labor Code provides that, if an employee is not provided with a required meal break, then his or her employer owes the employee one additional hour of compensation. Similarly, section 226.7 provides that, if an employee is not provided with a ten-minute rest break for every four hours worth of work, then his or her employer owes the employee one additional hour of compensation. As with violations of section 226 and 203, a violation of sections 512 and 226.7 calls for civil penalties that can be collected on behalf of the state in private employee actions.

12. In addition, section 1194 of the California Labor Code states that employees receiving less than the minimum wage or, alternatively, less than the statutory overtime compensation are entitled to recover these unpaid balances. Recovery would entail the payments of any unpaid balances for the full amount of the minimum wage or overtime compensation, plus interest on the unpaid balances, reasonable attorney's fees, and the costs of the suit. Upon violation, section 2699 also calls for civil penalties that can be collected on behalf of the state in private employee actions, as here. Moreover, the Fair Labor Standards Act ("FLSA") provides for the timely payment of a minimum wage and overtime to employees. (See 29 U.S.C. §§ 206 and 207.)

**Economic Evaluation of Potential Damages**

13. In order to evaluate the damage calculations that would be required for the FLSA violations at issue in Plaintiff's Motion for Certification of a Collective Action, it

---

earned, or correct applicable hourly wage rates.

is helpful to review certain documents. Attached as Exhibit 1 is a copy of a document produced by the Defendant with its initial disclosures: an "in station time sheet" for the week ending March 25, 2007. (CHEV_TREM0000165.) Exhibit 2 is a copy of Plaintiff's pay stub for the week ending March 25, 2007, as provided to me by counsel for Plaintiff. Exhibit 2 appears to have been generated from the information on the "in station time sheet." Analysis of these documents indicates that Plaintiff's night-shift overtime payment of $6.38 was computed using an overtime rate of $12.75. This rate is equivalent to the $8.50 day-shift rate multiplied by 1.5 rather than an overtime rate of $13.50, computed using the $9.00 night-shift rate multiplied by 1.5.

14. In addition, with respect to California employees, additional wages that are owed because of missed rest periods for employees who work alone, on the night shift, do not appear to have been included in Chevron's computation of Plaintiff's base rate. In other words, the base rate did not take account of either the $9.00 hourly rate, nor did it include the earnings from the additional hour of compensation earned by Plaintiff when she worked through her rest periods. The correct base rate should have been $81 of earnings (8 hours at $9 per hour plus $9 from one additional hour of compensation from missed rest periods) divided by 8 hours actually worked. This would be equivalent to a base rate of $10.125 per hour ($81 divided by 8), and a resulting overtime hourly rate of $15.1875.

15. Based upon my review of the computer records in this case, it is my belief that an estimation of FLSA damages that would be due employees who did not receive the correct overtime rate would be fairly straightforward and could be accomplished efficiently on a class-wide basis.

16. From Defendant's computer records, it would be fairly easy to determine the number of instances in which an employee was paid by a check that did not compensate the employee for his or her FLSA overtime wages using the appropriate base rate. Computerized information from Defendant's payroll database should be sufficient to provide an estimate of damages. Moreover, the same evidence that will be required to prove the amount of civil penalties owing under section 2699 of the California Labor Code will be sufficient to prove the magnitude of damages owing to Class Members for state-law overtime violations. Accordingly, it would be most efficient to grant certification because the evidence on liability and damage issues will be presented to this Court whether or not a collective action is certified.

17. Based on my experience, with proper access to Defendant's computer records and other discovery, it will be possible to present evidence efficiently regarding class-wide damages incurred on account of Defendant's violations of the FLSA. Further, it will be possible to present evidence efficiently regarding civil penalties owing on account of violations of section 2699 of the California Labor Code.

I declare under penalty of perjury under the laws of the State of California that the preceding is, to the best of my knowledge and belief, true and correct. Executed on this 1st day of April 2008.

Dr. Andrew Safir

EXHIBIT 1

Exhibit 1

# WEEKLY IN-STATION TIME SHEET - CALIFORNIA ONLY

Chevron Stations

INSTRUCTIONS TO EMPLOYEE: Print your name and the last 4 digits of your social security number in the left-hand column, then sign only after verifying the accuracy of your hours worked. If you have questions or concerns about any timekeeping matter, contact your Retail Business Consultant so that issues can be addressed promptly.

*EMPLOYEE ACKNOWLEDGEMENT: The hours I have listed match the time I have worked. I have received and taken a break of at least 10 minutes for each 4-hour period (or major fraction thereof) worked. I have received and taken a 30-minute meal period for every day of more than 5 hours worked.*

STATION LOCATION 879 Hopper Ave
STATION NUMBER 1759
WEEK ENDING 3/25/07 PAGE # 1 of 2

| Employee | | MON | TUE | WED | THUR | FRI | SAT | SUN | REG | OVT | DT | HOL | HW | VAC | SIK | TH | SD | SDO | MP | TOT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| STATION MGR. SUJANA SHRESTHA, SS# (last 4 digits) 8097 | In/Out | 5 / 2, 6 / 3 | 5 / 11, 11 / 1 | 5 / —, 1 | 5 / 11, 11 / 1 | 5 / 11, 11 / 1 | | | 40 | 2 | | | | | | | | | 2 | 44 |
| | Work Hours | 10 | 8 | 8 | 8 | 8 | | | | | | | | | | | | | | |
| | Call Log Hours | | | | | | | | | | | | | | | | | | | |
| | MP Hours | .5 | .5 | — | .5 | .5 | | | | | | | | | | | | | | |
| MANAGER'S TIME | | | | | | | | | | | | | | | | | | | | |
| ASSISTANT MGR. Robert Melgoza, SS# 7947 | In/Out | 8 / 4 | 8 / 4 | 11 — 2 | | [illegible] | 8, 11 / [illegible] | 8, 1 / [illegible] | 40 | 5.5 | | | | | | | | | 1.5 | 45.30 |
| | Work Hours | 8 | 8 | 3 | | 8 | 4 | 10.50 | | | | | | | | | | | | |
| | Call Log Hours | | | | | | | | | | | | | | | | | | | |
| | MP Hours | | | | | .5 | .5 | .5 | | | | | | | | | | | | |
| NAME Ivan Paniagua, SS# 3426 | In/Out | 6 / [illegible] | 1 / 11 / 10 | [illegible] / 11 / 10 | OFF | OFF | [illegible] | [illegible] | 40 | 1.5 | | | | | | | | | 1.5 | 41.50 |
| | Work Hours | 8 | 9 | 8.5 | | | 8 | 8 | | | | | | | | | | | | |
| | MP Hours | .5 | — | | | | .5 | .5 | | | | | | | | | | | | |
| NAME Kathy Tremblay, SS# 4143 | In/Out | 10 | 10 | [illegible] | [illegible] | [illegible] | [illegible] | 10 | 4 | | | | | | | | 16 | | | 40.50 |
| | Work Hours | 8.5 | 8 | | | 8 | 8 | 8 | | | | | | | | | | | | |
| NAME [illegible], SS# 0805 | In/Out | | | 12 | 6 | 10 | 10 | 10 | | | | | | | | | 40 | 1 | | [illegible] |
| | Work Hours | | | 8.5 | 5 | 8 | 4.5 | 4 | | | | | | | | | | | | |
| CASHIER TOTAL DAILY HOURS | | | | | | | | | TOTAL HOURS | | | | | | | | | | | |

I CERTIFY THE ACCURACY OF THIS TIMESHEET, INCLUDING ALL HOURS WORKED TO THE BEST OF MY KNOWLEDGE. I UNDERSTAND FALSIFICATION OF THIS TIMESHEET IS REASON FOR IMMEDIATE DISMISSAL.

HOURS AND TOTALS VERIFIED BY:

[signature] STATION MANAGER

| | | | |
|---|---|---|---|
| REG - Regular | HW - Holiday Worked | TH - Training | MP - Meal Period Unpaid |
| OVT - Overtime | HWC - Holiday Worked Comp | SD - Shift Differential | JUR - Jury Duty |
| DT - Double Time | VAC - Vacation | SDO - Shift Diff. OVT | BRE - Bereavement |
| HOL - Holiday | SIK - Sick Hours | SDH - Shift Diff. HOL Work | |

| | |
|---|---|
| MANAGER TOTAL HOURS | 40.00 |
| MANAGER OVERTIME HOURS | 2.00 |
| CASHIER REGULAR HOURS | 158.00 |
| CASHIER OVERTIME HOURS | 7.00 |
| CASHIER DOUBLE TIME HOURS | |
| TOTAL HOLIDAY HOURS | |
| TOTAL HOLIDAY WORKED | |
| TOTAL HOLIDAY WORKED COMP | |
| TOTAL VACATION HOURS | |
| TOTAL SICK HOURS | |
| TOTAL TRAINING/CLASS HOURS | 14.50 |
| TOTAL SHIFT DIFFERENTIAL | 56.50 |
| TOTAL SHIFT DIFFERENTIAL OVERTIME | 1.00 |
| TOTAL MEAL PERIOD UNPAID HOURS | 7.00 |
| TOTAL JURY DUTY HOURS | |
| TOTAL BEREAVEMENT HOURS | |
| STATION TOTAL HOURS | 286.7 |

TOTAL FORECASTED HOURS 286.-

TOTAL HOURS WORKED 286.-

- Original - Fax to payroll (877) 870-5878 and include the Weekly Home Telephone Call Log.
- Keep originals at station for 3 years from week ending date.
- After 3 years send the timesheet and Weekly Home Telephone Call Log to: CSI File Room, 6001 Bollinger Canyon Road, T2217, San Ramon, CA 94583.

MS-6681 (3-06) op0034C

Fax Received for CHEVRON: 03/26/2007 08:09AM, Printed 03/26/2007 08:14AM • Pg 2/4

EXHIBIT 2



REMOVE DOCUMENT ALONG THIS PERFORATION

| Employer | Id | Social Security | Status | Exemptions/Allowances | Number |
|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

| Code | Paygroup | Division | Department | Hire Date | Period Start | Period End | Pay Date |
|---|---|---|---|---|---|---|---|
| CHEVRON | 2 | 1700 | [illegible] | 12/15/06 | [illegible] | [illegible] | [illegible] |

Your CCE number is: [illegible]

| Earnings | Rate | Units | Current | Year To Date |
|---|---|---|---|---|
| Regular Hours | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Overtime 1.5x | [illegible] | [illegible] | [illegible] | [illegible] |
| Total | | | 354.69 | 4,531.38 |

| Taxes | Current | Year To Date |
|---|---|---|
| Federal Income Tax | [illegible] | [illegible] |
| Social Security (FICA) | [illegible] | [illegible] |
| Federal Medicare | [illegible] | [illegible] |
| California Income Tax | [illegible] | [illegible] |
| California State Disability | 2.13 | [illegible] |
| Total | 72.15 | 917.85 |

| After-Tax Deductions | Current | Year To Date |
|---|---|---|
| Starbridge Option 1 - EE + 1 | [illegible] | [illegible] |
| Starbridge Dental Employee + 1 | 7.90 | 15.80 |
| Child Support | 28.84 | [illegible] |
| Arrearages | 11.54 | [illegible] |
| Total | 68.23 | 419.12 |

| W2 Gross | 354.69 | 4,531.38 |
|---|---|---|

| Net Pay | 214.25 |
|---|---|

Chevron Stations Inc. - 6001 BOLLINGER CANYON ROAD San Ramon, CA 94583

© 2006 ADP, Inc.

Exhibit 2

**Attachment 1**
**Testimony Experience of Dr. Andrew Safir Since January 2003**

**Depositions Given as an Expert Witness:**

*Cadiz, Inc. v. Metropolitan Water District of Southern California*, Superior Court of the State of California, County of Los Angeles, Case No. BC 343232, March 20, 2008.

*Leisa Elliott, v. Starbucks Corporation LLC.*, United States District Court, Central District of California, Western Division, Case No. CV07-924-ODW (Ex) September 21, 2007.

*Leisa Elliott, v. Spherion Pacific Work LLC.*, United States District Court, Central District of California, Division, Case No. CV06-5032-ABC (PLAx) September 14, 2007.

*Ilshin Investment Co. Ltd., v. Buena Vista Home Entertainment, Inc.*, Superior Court of the State of California, County of Los Angeles, Case No. BC 327911, April 13, 2007.

*Toby Harris et al. v Investor's Business Daily, Inc., et al.*, Superior Court of the State of California, County of Los Angeles, Central District, Case No. BC 269313, April 12, 2007.

*Bickford and Niagara Films v. Pohlad and River Road Entertainment*, Case No. 120035084, before the Judicial Arbitration and Mediation Services, Inc., December 13, 2006.

*AEP Energy Services Gas Holding Company v Bank of America, N.A.*, Civil Action No. H-03-4973, United States District Court for the Southern District of Texas, Houston Division, March 10, 2006, November 29, 2006.

*Shopco Advisory Corp. v. Jeffrey Soffer, et al.*, United States District Court, Southern District of Florida, Case No. 05-22359-CIV-Seitz-McAliley, October 17, 2006.

*CononcoPhillips Co. v. Riata Energy, et al.*; 112th Judicial District, District Court, Pecos County, Texas, Cause No. 9,846, March 15, 2006; July 20, 2006.

*El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, United States District Court, Southern District of Texas, Laredo Division, Civil Action NO. L-04-CV-48, May 23, 2006.

Coordination Proceeding Special Title (Rule 1550(b)), *Natural Gas Antitrust Cases* I, II, III, & IV (Southern California only), J.C.C.P. Nos. 4221, 4224, 4226, and 4228, Superior Court of the State of California, County of San Diego, July 16 and 23, 2004, June 16 and 17, 2005, May 11, 2006.

AEP Energy Services Gas Holding Company v Bank of America, N.A.,; Civil Action NO. H-03-4973, United States District Court for the Southern District of Texas, Houston Division, March 10, 2006.

*Air Alliant, LLC and James L. Kochman v. The New Piper Aircraft, Inc. et al.*, Case No. 1-03-CV-817012, Superior Court of the State of California for the County of Santa Clara, January 12, 2006.

*Langeland v. Sea Launch Company, LLC*, Case No. BC306667, Superior Court of the State of California for the County of Los Angeles, January 12, 2005.

*Andes Trading de Mexico v. Church & Dwight Co., Inc.*, Docket No. MER-L-3125-02, Superior Court of New Jersey, Law Division, Mercer County, December 22, 2004.

*Punto Azul S.A. de C.V. v. Harris Specialty Chemicals, Inc. et al.*, Case No. 00-14903 CA06, In the Circuit Court of the 11th Judicial District in and for Dade County, Florida, August 5, 2004.

*Ellis v. IAC, Ltd. et al.*, Case No. BC 246998, Superior Court of the State of California for the County of Los Angeles, April 16, 2004.

**Testimony at Trial or Arbitration:**

*Ilshin Investment Co. Ltd., v. Buena Vista Home Entertainment, Inc.*, Superior Court of the State of California, County of Los Angeles, Case No. BC 327911, August 23 & 24, 2007.

*El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, United States District Court, Southern District of Texas, Laredo Division, Civil Action NO. L-04-CV-48, July 25, 2007.

*Andes Trading de Mexico v. Church & Dwight Co., Inc.*, Docket No. MER-L-3125-02, Superior Court of New Jersey, Law Division, Mercer County, September 29, 2005.

**Testimony before Regulatory Bodies:**

*Rebuttal Submission* on behalf of Imperial Oil Resources and Exxon/Mobil Canada Energy, before the Alberta Energy and Utilities Board in the Matter of an Inquiry into Natural Gas Liquids Extraction, November 6, 2007.

*The Impact of Comprehensive Component Metering and Competitive Extraction on the Alberta Natural Gas Liquids Market*, on behalf of Imperial Oil Resources and Exxon/Mobil Canada Energy, before the Alberta Energy and Utilities Board in the Matter of an Inquiry into Natural Gas Liquids Extraction, August 28, 2007.

*Written Evidence of Dr. Andrew Safir on Behalf of Imperial Oil* before the National Energy Board in the Matter of an Application by Enbridge Pipelines Inc., July 2007 (RH-2-2007).

*Testimony of Dr. Andrew Safir on Behalf of the Mackenzie Valley Pipeline* before the National Energy Board regarding the Application for a Certificate of Public Convenience and Necessity for the Mackenzie Gas Pipeline, July and November 2006, (GH-1-2004).

*Testimony of Dr. Andrew Safir on Behalf of the Industry Group* before the National Energy Board regarding TransCanada Pipelines Limited and TransCanada Keystone Pipeline GP Ltd. Application for Leave to Transfer Pipeline Facilities, October 2006, (MH-1-2006).

*Written Evidence of Dr. Andrew Safir on Behalf of the Industry Group* before the National Energy Board regarding TransCanada Pipelines Limited and TransCanada Keystone Pipeline GP Ltd. Application for Leave to Transfer Pipeline Facilities, September 2006, (MH-1-2006).

*Reply Evidence of Dr. Andrew Safir on Behalf of the Mackenzie Valley Pipeline* before the National Energy Board regarding the Application for a Certificate of Public Convenience and Necessity for the Mackenzie Gas Pipeline, July 2005, (GH-1-2004).

*Prepared Cross Answering Testimony of Dr. Andrew Safir On Behalf of The Firm Shipper Group,* regarding a rate proceeding for Maritimes & Northeast Pipeline, L.L.C., March 2005, (RP04-360-000).

*Prepared Direct and Answering Testimony of Dr. Andrew Safir On Behalf of The Firm Shipper Group*, regarding a rate proceeding for Maritimes & Northeast Pipeline, February 2005, L.L.C. (RP04-360-000).

*Additional Written Evidence of Dr. Andrew Safir on Behalf of the Mackenzie Valley Pipeline* before the National Energy Board regarding the Application for a Certificate of Public Convenience and Necessity for the Mackenzie Gas Pipeline, January 2005, (GH-1-2004).

*Written Evidence of Dr. Andrew Safir on Behalf of the Canadian Association of Petroleum Producers* before the National Energy Board regarding TransCanada PipeLines Limited Mainline 2004 Tolls Application (Phase 2, Cost of Capital), October 2004, (RH-2-2004).

*Response Evidence of Dr. Andrew Safir on Behalf of the Canadian Association of Petroleum Producers* before the National Energy Board regarding TransCanada PipeLines Limited Application for the North Bay Junction, July 2004, (NBJ RH-3-2004).