1  Alan Harris (SBN 146079)
   David Zelenski (SBN 231768)
2  HARRIS & RUBLE
   5455 Wilshire Boulevard, Suite 1800
3  Los Angeles, California 90036
   Telephone:  (323) 931-3777
4  Facsimile:  (323) 931-3366
   law@harrisandruble.com
5  dzelenski@harrisandruble.com

6  Attorneys for Plaintiff

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11 CATHERINE TREMBLAY, individually          Case No. CV 07-6009 EDL
   and on behalf of all others similarly
12 situated,                                 **PLAINTIFF'S MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES IN**
13            Plaintiff,                      **SUPPORT OF MOTION FOR**
                                             **CERTIFICATION OF COLLECTIVE**
14      v.                                   **ACTION**

15 CHEVRON STATIONS, INC., and DOE           Date:  May 6, 2008
   ONE through and including DOE TEN,        Time:  9:00 a.m.
16                                           Place:  Courtroom E, 15th Floor
              Defendants.
17                                           *Assigned to Hon. Elizabeth D. LaPorte*

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    The Proposed Notice and Consent-to-Sue Forms Are
      Appropriate ................................................................................................. 1

      A.    Time Period to Be Covered ................................................................. 1

      B.    Plaintiff's Notice Does Not Create an Appearance of Court-
            Endorsement .............................................................................. 2

      C.    The Notice Should Not Threaten Chevron's Employees ........................... 3

      D.    Plaintiff's Counsel Is Entitled to Information Regarding the
            Class ....................................................................................... 4

II.   The Failure to Consider Wages Earned on Account of Work
      Performed During Rest and Meal Periods in Computing Federal
      Overtime ................................................................................................... 5

III.  Plaintiff Satisfies the *Hoffman-La Roche, Inc.* Notice Standard .......................... 7

IV.   Conclusion ............................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

*Cases*

3

Adams v. Inter-Con Sec. Sys., Inc.
4       2442 F.R.D. 530 (N.D. Cal. 2007) ……………………………………………………… 2, 3, 4

5       Adkins v. Mid-American Growers, Inc.
6       143 F.R.D. 171 (N.D. Ill. 1992) …………………………………………………………… 4

7       Alyeska Pipeline Servs. Co. v. Wilderness Soc'y
        421 U.S. 240 (1975) ……………………………………………………………………….. 3

8
        Anderson v. Mt. Clemens Potter Co.
9       328 U.S. 680 (1946) ……………………………………………………………………... 9, 10, 11

10
        Bahramipour v. Citigroup Global Mkts, Inc.
11      2006 U.S. Dist. LEXIS 9010 (N.D. Cal. 2006) ……………………………………………... 2

12      Barnett v. Washington Mutual Bank, FA
13      2004 U.S. Dist. LEXIS 18491 (N.D. Cal. 2004) …………………………………………… 2

14      Belaire-West Landscape, Inc. v. Superior Court
        149 Cal. App. 4th 554 (2007) ………………………………………………………………… 5
15
        Bell v. Superior Court
16      158 Cal. App. 4th 147 (2007) …………………………………………………………… 14, 15

17
        Brock v. Seto
18      790 F.2d 1446 (9th Cir. 1986) ……………………………………………………………… 11

19      Bouman v. Block
20      940 F.2d 1211 (9th Cir. 1991) ……………………………………………………………… 10

21      Bureerong v. Uvawas
22      922 F. Supp. 1450 (C.D. Cal. 1996) ………………………………………………………… 2

23      Caridad v. Metro-North Commuter R.R.
        191 F. 3d 283 (2d Cir. 1999) ………………………………………………………………… 10
24
        Chabner v. United of Omaha Life Ins. Co.
25      225 F.3d 1042 (9th Cir. 2000) ……………………………………………………………... 2

26      Cortez v. Purolator Air Filtration Prods.
27      23 Cal. 4th 163 (2000) ……………………………………………………………………... 1

28

Crain v. Helmerich & Payne Intern. Drilling Co.
1992 WL 91946 (E.D. La. 1992) ........................................................................ 13

Dondore v. NGK Metals Corp.
152 F. Supp. 2d 662 (E.D. Pa. 2001) ................................................................... 4

Dukes v. Wal-Mart, Inc.
222 F.R.D. 189 (N.D. Cal. 2004) ....................................................................... 10

Dukes v. Wal-Mart, Inc.
474 F.3d 1214 (9th Cir. 2007) .......................................................................... 10

Gjurovich v. Emmanuel's Marketplace, Inc.
282 F. Supp. 2d 91 (S.D.N.Y. 2003) ............................................................. 5, 7–8

Glenn v. Gen. Motors Corp.
841 F.2d 1567 (11th Cir. 1988) .......................................................................... 3

Grayson v. K-Mart Corp.
79 F.3d 1086 (11th Cir. 1996) ........................................................................ 7, 8

Harris v. Investor's Bus. Daily, Inc.
138 Cal. App. 4th 28 (2006) .............................................................................. 1

Hayes v. Singer Co., Inc.
696 F.2d 884 (11th Cir. 1983) ............................................................................ 7

Hoffman-La Roche, Inc. v. Sperling
493 U.S. 165 (1989) ...................................................................................... 1, 4

Hoffman v. Sbarro, Inc.
982 F. Supp. 249 (S.D.N.Y. 1997) ...................................................................... 8

Iglasias-Mendoza v. La Belle Farm, Inc.
239 F.R.D. 363 (S.D.N.Y. 2007) ......................................................................... 5

Kurihara v. Best Buy Co., Inc.
2007 U.S. Dist. LEXIS 64224 (N.D. Cal. 2007) .................................................. 10

Masson v. Ecolab, Inc.
2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. 2005) .................................................... 2

McGrath v. City of Philadelphia
1994 U.S. Dist. LEXIS 1495 (E.D. Pa. 1994) ........................................................ 4

Mooney v. Aramco Servs., Inc.
54 F.3d 1207 (5th Cir. 1995) .............................................................................. 7

Reich v. Homier Distrib. Co.
362 F. Supp. 2d 1009 (N.D. Ind. 2004) ……………………………………………………. 14

Rural Fire Prot. Co. v. Hepp
366 F.2d 355 (1966) ………………………………………………………………… 9, 10

San Antonio Metropo. Transit Auth.
684 F. Supp. 158 (W.D. Tex. 1988) …………………………………………………….. 3

Saunders v. Superior Court
27 Cal. App. 4th 832 (1994) …………………………………………………………… 2

Scott v. Aetna Servs., Inc.
210 F.R.D. 261 (D. Conn. 2002) ………………………………………………………. 7

Soler v. G & U, Inc.
86 F.R.D. 524 (S.D.N.Y. 1980) ………………………………………………………… 1

Thiebes v. Wal-Mart Stores, Inc.
1999 U.S. Dist. LEXIS 18649 (D. Or. 1999) …………………………………………….. 12

Thiessen v. G.E. Elec. Capital Corp.
267 F.3d 1095 (10th Cir. 2001) ……………………………………………………….. 13

Tomlinson v. Indymac Bank, F.S.B.
359 F. Supp. 2d 898 (C.D. Cal. 2005) ……………………………………………….. 1, 2

Werthein v. State of Arizona
1993 U.S. Dist. LEXIS 21292 (D. Ariz. 1993) …………………………………………… 8

*Statutes & Regulations*

29 U.S.C. § 216 …………………………………………………………………….. 3

29 U.S.C. § 255 …………………………………………………………………….. 2

29 C.F.R. § 778.200 ………………………………………………………………… 6

29 C.F.R. § 778.201 ………………………………………………………………… 7

29 C.F.R. § 778.202 ………………………………………………………………… 7

29 C.F.R. § 778.224 ………………………………………………………………… 6

Cal. Bus. & Prof. Code § 17200 ……………………………………………………… 1

Cal. Lab. Code § 226 ………………………………………………………………. 12

1    ***I.        The Proposed Notice and Consent-to-Sue Forms Are Appropriate.***

2           Defendant Chevron Stations, Inc. ("Chevron") asserts that Plaintiff's proposed notice is defective

3    and that a revised form should be used.  An analysis of Chevron's form reveals two main differences

4    from Plaintiff's:  Chevron wants to threaten employees by including an *in terrorem* reference to costs,

5    and Chevron improperly suggests that those who opt in will have no role in determining the course of

6    the litigation.  Because Plaintiff's proposed notice and consent-to-sue forms are entirely appropriate and

7    because Chevron points to no authority supporting its suggested modifications, the Court should approve

8    Plaintiff's proposed notice.  "Successful implementation of [section 216(b) of the Fair Labor Standards

9    Act] requires broad dissemination of information to the class of persons potentially affected by the suit."

10   Soler v. G & U, Inc., 86 F.R.D. 524, 530 (S.D.N.Y. 1980).  Indeed, the benefits of section 216(b)

11   "depend on employees receiving accurate and timely notice concerning the pendency of the collective

12   action, so that they can make informed decisions about whether to participate."  Hoffman-LaRoche, Inc.

13   v. Sperling, 493 U.S. 165, 170 (1989).  Chevron's proposed changes, of which no explanation has been

14   provided, should be rejected.  Indeed, by requesting that the Court excise the first line of Plaintiff's

15   proposed notice—while line simply tells employees to "PLEASE READ THIS NOTICE

16   CAREFULLY"—Chevron telegraphs that it is not seeking to improve the notice but, instead, has

17   another agenda.

18          ***A.        Time Period to Be Covered.***

19          Plaintiff's sixth claim for relief is brought under the unfair-competition law ("UCL"), California

20   Business and Professions Code section 17200 *et seq.*, for Chevron's failure to comply with the Fair

21   Labor Standards Act ("FLSA").  (First Am. Compl. ¶¶ 58–59.)  A four-year statute governs a UCL

22   action based on the failure to pay overtime wages.  Cortez v. Purolator Air Filtration Prods., 23 Cal. 4th

23   163, 178–79 (2000) (holding that "any action on any UCL cause of action is subject to the four-year

24   period of limitations created by that section").  Plaintiff's alleged FLSA violation can provide the

25   predicate basis for California's UCL claim.  Harris v. Investor's Bus. Daily, Inc., 138 Cal. App. 4th 28

26   (2006); Tomlinson v. Indymac Bank, F.S.B., 359 F. Supp. 2d 898 (C.D. Cal. 2005) (holding that

27   California's UCL provides an independent basis for bringing claims under the FLSA).  Thus, it follows

28   that notice should be sent out for the four-year period before the Complaint was filed.

1

2       The UCL "borrows" violations of other laws and provides an independent state-law remedy for

3   those violations.  Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).

4   Virtually any violation of federal, state, or local law may serve as the predicate act for a claim under the

5   UCL.  Saunders v. Superior Court, 27 Cal. App. 4th 832, 838–39 (1994).  In particular, a violation of the

6   FLSA may serve as the basis for a claim brought under the UCL.  Barnett v. Washington Mutual Bank,

7   FA, 2004 U.S. Dist. LEXIS 18491 at *14–22 (N.D. Cal. 2004) (holding that plaintiffs were entitled to

8   recover FLSA overtime wages pursuant to a claim under the UCL); Tomlinson, 359 F. Supp. 2d at 900

9   (C.D. Cal. 2005) (holding that plaintiffs were entitled to recover FLSA wages through a separate UCL

10  claim); Bahramipour v. Citigroup Global Mkts., Inc., 2006 U.S. Dist. LEXIS 9010 (N.D. Cal. 2006)

11  (same); Bureerong v. Uvawas, 922 F. Supp. 1450, 1477 (C.D. Cal. 1996) (holding that plaintiffs had

12  properly stated a claim under the UCL that alleged FLSA violations as one of the predicate acts).

13      The above makes clear that Chevron's claim that the notice should be limited to the two years

14  prior to the filing of the Complaint should be rejected.  Even in the absence of a UCL claim, the notice

15  should, at minimum, go out for a three-year period of time, as Plaintiffs have alleged willful conduct.

16  Masson v. Ecolab, Inc., 2005 U.S. Dist. LEXIS 18022 at * (S.D.N.Y. 2005) ("Claims alleging violations

17  of FLSA overtime requirements are subject to a two-year statute of limitations, except when the

18  violation is determined ultimately to have been willful; in such cases, the statute of limitations is three

19  years.  See 29 U.S.C. § 255(a)."); Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 541, 542 (N.D.

20  Cal. 2007) (three-year statute for notice purposes).  In any event, Plaintiff has a UCL claim, and the

21  appropriate time period for the notice would be from the four years prior to the filing of the Complaint

22  through the date on which the Motion for Certification is granted.

23      **B.    *Plaintiff's Notice Does Not Create an Appearance of Court-Endorsement.***

24      Although Chevron is long on hyperbole, it is short on explaining *why* the proposed notice should

25  not reflect that this Court has certified a collective action.  Without explanation, Chevron seeks to

26  eliminate the statement that, "[p]ursuant to an Order of the United States District Court for the Northern

27  District of California (the "Court"), a federal-law collective action has been certified."  (Harris Decl. in

28  Support of Motion for Certification of a Collective Action ("Harris Decl.") Ex. 3 at 1.)  The notice is

1

2

neutral and does not create an appearance that the Court endorses the merits of Plaintiff's claims.  As a

matter of fact, the notice clearly states:

3

4

5

6

> This Notice is not intended to be, and should not be construed as, an expression of any
>
> opinion by the Court with respect to the truth of the allegations in the Litigation or the
>
> merits of the claims or defenses asserted.  This Notice is to advise you of the case and
>
> your rights in connection with it.

7

(Harris Decl. Ex. 3 at 1.)

8

### C.      The Notice Should Not Threaten Chevron's Employees.

9

10

Chevron implicitly claims that the notice is inaccurate because it does not inform potential opt-in

plaintiffs about potential costs they may be required to pay.  However, such warnings of financial burden

11

12

are improperly calculated to chill participation.  Chevron provides no support for including its proposed

language in the notice that "[y]ou may also be held liable for costs associated with this lawsuit."  (Decl.

13

14

of Aaron L. Agenbroad in Supp. of Opp'n to Mot. for Class Certification Pursuant to 29 U.S.C. § 216(b)

("Agenbroad Decl.") Ex. C at 2.)  Chevron's request that employees be notified regarding unspecified

15

16

costs for which they might be responsible is nothing more than a veiled threat and intimidation.  Cf.

Adams, 242 F.R.D. at 540 (stating that notice should not make reference to purported "travel expenses").

17

18

In fact, Chevron is not entitled to an award of fees or costs.  See 29 U.S.C. § 216(b) (stating that

only *prevailing plaintiffs* are entitled to fees and costs).  The FLSA—one of the most powerful rights

19

20

statutes in history—expressly mandates that costs be awarded only to plaintiffs "to be paid by the

defendant."  29 U.S.C. § 216(b).  Courts uniformly recognize the one-sided nature of the FLSA.  Glenn

21

22

v. Gen. Motors Corp., 841 F.2d 1567, 1575 n.23 (11th Cir. 1988), *cert. denied*, 488 U.S. 948 (1988)

("[W]e recognize that . . . the language of section 216(b) is mandatory and favors plaintiffs only");

23

24

Alyeska Pipeline Servs. Co. v. Wilderness Soc'y, 421 U.S. 240, 262 (1975).  Of course, if Congress had

intended that a "prevailing employer" be able to recover its attorney's fees and costs from employees

25

26

who sue for wages, it could have easily included a routine prevailing-party provision.  It did not.  San

Antonio Metropo. Transit Auth., 684 F. Supp. 158, 161 (W.D. Tex. 1988), *affirmed,* 876 F.2d 441 (5th

27

28

1  Cir. 1989) (relying on the "plain language" of the FLSA to deny an award of costs to the "prevailing"

2  defendant).

3       Similarly, a defendant in a class-action lawsuit brought under the FLSA is not automatically

4  entitled to individualized discovery as Chevron suggests.  Adkins v. Mid-American Growers, Inc., 143

5  F.R.D. 171 (N.D. Il. 1992) (holding that an employer is not entitled to individualized discovery in FLSA

6  class actions); McGrath v. City of Philadelphia, 1994 U.S. Dist LEXIS 1495 at *8 (E.D. Pa. 1994) ("[I]t

7  is well-established that individualized discovery . . . is inappropriate in a[n FLSA] class action

8  lawsuit.").  As such, the proposed changes to the notice—"you may be required to respond to written

9  questions, sit for depositions, and/or testify in court" (Agenbroad Decl. Ex. C at 2)—are inappropriate.

### D.    *Plaintiff's Counsel Is Entitled to Information Regarding the Class.*

11      Without explanation, Chevron objects to asking employees to provide their phone numbers, and

12  Chevron eliminates the suggestion that "[a]ny questions regarding this Notice or the Opt In Form should

13  be sent to Class Counsel at the address and telephone number set forth above."  (Harris Decl Ex. 3 at 4.)

14  The objections and changes are specious.  Although no formal attorney-client relationship exists between

15  putative class counsel and class members prior to joining this action, there is at least a fiduciary

16  relationship between counsel and the class that he or she seeks to represent.  See Dondore v. NGK

17  Metals Corp., 152 F. Supp. 2d 662 (E.D. Pa. 2001) (counsel for defendant in a class action was ethically

18  barred from any contact with potential members of the class, even in the pre-certification stage of the

19  proceeding).

20      It only makes sense that Class Counsel be allowed to answer questions regarding this litigation

21  from Class Members who want information because they may soon be forming an attorney-client

22  relationship.  They are, after all, seeking legal advice.  Providing Plaintiff's counsel with the contact

23  information of all potential Plaintiffs will not violate employees' privacy rights.  Indeed, the Supreme

24  Court has expressly authorized production of this type of information for notice purposes.  See

25  Hoffmann-La Roach, Inc., 493 U.S. at 170 (1989).  Moreover, any privacy arguments, in the FLSA

26  notice context, have been categorically rejected by courts that routinely provide such information.

27  Adams, 242 F.R.D. at 539–40 (rejecting defendant's privacy argument and ordering production of

28

1   contact information); <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 369–70 (S.D.N.Y. 2007)

2   (ordering production of contact information of potentially similarly situated plaintiffs who may wish to

3   opt-in to a collective action); <u>Jurovish v. Emmanuels Marketplace, Inc.</u>, 282 F. Supp. 2d 91, 100

4   (S.D.N.Y. 2003) (same).  In this regard, the California Supreme Court recently decided a case that

5   thoroughly addressed California's privacy concerns in a class action when it ruled that plaintiffs' counsel

6   was entitled to such information for pre-certification discovery.  <u>Pioneer Electronics (USA), Inc. v.</u>

7   <u>Superior Court</u>, 40 Cal. 4th 360 (2007).  Lest there be any further confusion on this issue, an appellate

8   court has recently ruled that, in a class-action suit for overtime wages, plaintiffs' counsel was entitled to

9   the names, last-known addresses, and last-known telephone numbers of all the people employed by the

10   defendant-employer.  <u>Belaire-West Landscape, Inc. v. Superior Court</u>, 149 Cal. App. 4th 554 (2007).

11         Turning from the proposed notice to the proposed opt-in form, Chevron includes language in its

12   version that incorrectly advises employees that they "designate the class representative as [their] agent to

13   make decisions on [their] behalf concerning the litigation, the method and manner of conducting this

14   litigation, the entering of an agreement with plaintiff's counsel concerning the attorneys' fees and costs,

15   and all other matters pertaining to this lawsuit."  (Agenbroad Decl. Ex. C at 4.)  There is no basis for this

16   misleading statement, and the Court should adopt Plaintiff's opt-in form.

17         Finally, Chevron incorrectly suggests that Plaintiff seeks certification of a collective action with

18   respect to employees in states other than California.  In fact, the Motion only seeks to certify a collective

19   action with respect to California employees:  those who are entitled to an extra hour of wages for

20   working through their rest periods and meal breaks mandated by California state law.

21         In sum, the notice and consent-to-join forms offered by Plaintiff have direct support under

22   federal decisions.  In contrast, Chevron has offered little no authority supporting its position.

23   Accordingly, Plaintiff requests that the Court utilize Plaintiff's proposed forms.

24   **II.**   *The Failure to Consider Wages Earned on Account of Work Performed During Rest and Meal*

25         *Periods in Computing Federal Overtime.*

26         It is necessary to consider wages earned on account of work performed during rest and meal

27   periods in computing *federal* overtime rates.  At base, the defense does not refute Plaintiff's contentions

28

1    regarding Chevron's systematic miscalculation of overtime rates.  It only points—in a footnote—to a

2    Department of Labor Standards Enforcement ("DLSE") Policies and Interpretations Manual argument

3    that "rest period pay" need not be considered when determining the overtime rate.  (Def.'s Opp'n to Mot.

4    for Class Certification Action Pursuant to 29 U.S.C. § 216(b) ("Def.'s Opp'n") at 9 n.5.)  However,

5    under the FLSA, the issue is to be decided by *federal* law, and, under federal law, wages owing on

6    account of missed rest period and meal breaks are to be considered in computing the proper overtime

7    rate.  (See Pl.'s Mem. of P. & A. in Supp. of Mot. for Certification of Collective Action ("Pl.'s Mem. in

8    Supp. of Mot.") at 2:5–7:11.)

9        Both the DLSE and Chevron refer to 29 C.F.R. § 778.224.  (See Def.'s Opp'n at 9 n.5)  That

10   section reads:

11       The preceding sections have enumerated and discussed the basic types of payments for

12       which exclusion from the regular rate is specifically provided under section 7(e)(2)[, that

13       is, 29 C.F.R. § 778.200(a)(2),] because *they are not made as compensation for hours of*

14       *work*.  Section 7(e)(2) also authorizes exclusion from the regular rate of "other similar

15       payments to an employee which are not made as compensation for his hours of

16       employment."  Since a variety of miscellaneous payments are paid by an employer to an

17       employee under peculiar circumstances, it was not considered feasible to attempt to list

18       them.  They must, however, be "similar" in character to the payments specifically

19       described in section 7(e)(2).  It is clear that the clause was not intended to permit the

20       exclusion from the regular rate of payments such as bonuses or the furnishing of facilities

21       like board and lodging which, though not directly attributable to any particular hours of

22       work are, nevertheless, clearly understood to be compensation for services.

23   29 C.F.R. § 778.224 (emphasis supplied).  See also 29 C.F.R. § 778.200 (explaining that amounts paid

24   to employees are excluded from the regular-rate calculation when they are "[s]ums paid as gifts;

25   payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for

26   service, *the amounts of which are not measured by or dependent on hours worked, production, or*

27   *efficiency*; [p]ayments made for occasional periods when no work is performed due to vacation, holiday,

28   illness, failure of the employer to provide sufficient work, or similar cause; reasonable payments for

1  traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's

2  interests and properly reimbursable by the employer; *and other similar payments to an employee which*

3  *are not made as compensation for his hours of employment*").  Because the compensation paid to

4  employees who work through their meal and rest breaks constitute compensation for actual hours

5  worked, they must be included in the regular-rate calculation.

6      In this regard, Plaintiff notes that Chevron also refers to 29 C.F.R. §§ 778.201 and 778.202 in

7  order to argue that compensation for working through meal and rest periods should not be included in

8  determining an employee's regular rate of compensation.  Those sections, however, simply make express

9  the obvious, *computationally necessary* requirement that, when calculating an individual's regular rate

10  of pay—which calculation is *only* performed in order to determine what that individual's overtime rate

11  of pay is—his or her overtime rate of pay *must* be excluded.  Put differently, it is impossible to include

12  the overtime rate of pay in the regular-rate-of-pay calculation because the correct overtime rate of pay

13  can *only* be determined *after* computing the correct regular rate of pay.  However, the same

14  computational problem does not occur with respect to the extra compensation owing on account of

15  foregone meal and rest breaks because the California Labor Code actually specifies what that extra

16  compensation amount is:  "one additional hour of pay at the employee's regular rate of compensation for

17  each work day that the meal or rest period is not provided."  Cal. Lab. Code § 226.7.  Accordingly,

18  Chevron's reliance on 29 C.F.R. §§ 778.201 and 778.202 is misplaced.

19  **III.    *Plaintiff Satisfies the* Hoffman-La Roche, Inc. *Notice Standard.***

20      Plaintiff satisfies the lenient, first-phase Hoffman-La Roche, Inc. standard for providing notice to

21  employees.  This case is at that first phase, that is, the phase where the Court "examines the pleadings

22  and affidavits of the proposed class action and determines whether the proposed class members are

23  'similarly situated.'"  Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 264 (D. Conn. 2002) (quoting Mooney

24  v. Aramco Servs., Inc., 54 F.3d 1207, 1213 (5th Cir. 1995) ("Courts utilize a two-step approach to

25  certifying collective actions under the FLSA.").  (See Pl.'s Mem. in Supp. of Mot. at 9:15–19:17.)  In

26  other words, Plaintiff simply must show "a 'reasonable basis' for [her] . . . class-wide" claim.  Grayson

27  v. K-Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996) (quoting Haynes v. Singer Co., Inc., 696 F.2d 884,

28  887 (11th Cir. 1983).  Plaintiff's burden at this stage "is not heavy."  Gjurovich v. Emmanuel's

1   Marketplace, Inc., 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003) ("[P]laintiff's burden is minimal, especially

2   since the 'determination that potential plaintiffs are similarly situated' is merely a 'preliminary' one")

3   (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "'Plaintiffs need show only

4   that their positions are similar, not identical, to the positions held by the putative class members.'"

5   Grayson, 79 F.3d at 1096 (quoting Sperling, 118 F.R.D. 392, 407 (D.N.J. 1988)).

6       Chevron claims a need to analyze whether Plaintiff and other employees are similarly situated.

7   (See Def.'s Opp'n at 6:7–10:5.)  But this *second* phase comes later in the case, *after* notice, expiration of

8   the opt-in period, and completion of discovery.  Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D.

9   Pa. 2000) (higher standard used on motion to decertify after close of discovery).  Discovery with regard

10  to the claims of other Chevron employees is just beginning, and, thus, the lenient first-phase standard

11  applies.  See Pfohl v. Farmers Insurance Group, 2004 U.S. Dist. LEXIS 6447 at *7–8 (C.D. Cal. 2004)

12  (proceeding to the second-phase determination *as discovery had taken place*).  At the notice stage,

13  plaintiffs only need only to make a "modest factual showing" that members of each proposed class were

14  victims of a common policy or plan.  Hoffman v. Sbarro, Inc., 982 F. Supp. at 261.  This means that

15  Plaintiff need merely show that "some identifiable factual or legal nexus binds together the various

16  claims of the class members in a way that hearing the claims together promotes judicial efficiency and

17  comports with the broad remedial policies underlying the FLSA."  Wertheim v. State of Arizona, 1993

18  U.S. Dist. LEXIS 21292 at *3 (D. Ariz. 1993).  As explained in Grayson, "plaintiffs may meet this

19  burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is,

20  detailed allegations supported by affidavits which successfully engage defendants' affidavits to the

21  contrary.  Grayson, 79 F.3d at 1097.

22      Here, Plaintiff alleges how and why Chevron employees throughout the company have not been

23  paid all the overtime wages to which they are entitled.  Plaintiff alleges that Chevron employees were

24  routinely paid at artificially low overtime rates—rates that failed to include wages earned on account of

25  missed meal and rest periods and rates that failed to include proper consideration of shift differentials.

26  (See Pl.'s Mem. in Supp. of Mot. at 2:5–12.)  Chevron studiously ignores the evidence in support,

27  dismissing Dr. Safir, for instance, as having "pontificate[d]" rather than having addressed the substance

28  of his findings.  (Def.'s Opp'n at 1:10.)  *Significantly, however, there is no attempt to deny that*

1    *individuals working alone on a graveyard shift are entitled to an additional hour of wages on account of*

2    *missed rest periods, there is no attempt to deny that shift differentials must be considered in determining*

3    *overtime rates, and there is not attempt to deny that all Chevron employees had their regular (base)*

4    *rates calculated in the same way that Plaintiff's regular (base) rate was calculated.*  Dr. Safir reviewed

5    the data, including Chevron's own payroll information, and concluded that "it would be fairly easy to

6    determine the number of instances in which an employee was paid by a check that did not compensate

7    the employee for his or her FLSA overtime wages using the appropriate base rate."  (Harris Decl. Ex. 1

8    at ¶ 16.)

9        In addition to dismissing Dr. Safir's conclusions, Chevron improperly attacks certification on the

10    theory that "the accuracy of employee timesheets in connection with meal periods is spotty and subject

11    to both intentional and inadvertent error."  (Def.'s Opp'n at 9:11–12.)  However, in <u>Rural Fire Protection</u>

12    <u>Co. v. Hepp</u>, 366 F.2d 355 (1966), *overruled on other grounds by* <u>Mayle v. Felix</u>, 545 U.S. 644 (2005),

13    the Ninth Circuit dealt with a nearly identical attempt by an employer to distance himself from, and to

14    deny the accuracy of, his own payroll records.  <u>See</u> <u>Rural Fire Prot. Co.</u>, 366 F.2d at 359.  In that

15    overtime action, the employer appealed an award to the plaintiff, in part objecting to the district court's

16    use of the employer's records as a basis for the award.  <u>Id.</u>  The Court held:

17        The use by the district court of appellant's own time records to prove the number

18        of hours worked was proper. <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687–8,

19        66 S.Ct. 1187, 90 L.Ed. 1515 (1946), points out that the Fair Labor Standards Act places

20        on the employer the duty to keep such records and the employees have no such duty.  29

21        U.S.C. § 211(c).  That case also establishes that the use of the employer's records to

22        establish the amount of time worked is proper, and that if the employer has kept proper

23        and accurate records the employees' burden of proof is discharged by merely producing

24        those records.  That is what the appellees did in this case, and *we agree with the district*

25        *court that since the records were kept in accordance with the practices of the employer*

26        *and not those of the employees, and since the employer had found the records adequate*

27        *for years for purposes such as income tax, social security, and insurance, it can hardly*

28        *now claim that its records are improper.*  But even if we were to agree that the records

9

1
2
3
4
5
6
7

which were kept by appellant were not accurate, the appellant would not be helped, for the Anderson v. Mt. Clemens Pottery Co. opinion goes on to state that where the employer has kept poor records the employees need only establish the amount of work performed as a matter of reasonable inference.  Here the records, kept by management . . . provide an adequate basis upon which to determine the hours worked and *in light of its long continued reliance on these records for a variety of purposes, appellant's efforts to impeach them were a failure*.

8

Rural Fire Protection Co., 366 F.2d at 359–60 (emphasis supplied).

9
10
11
12
13

Furthermore, the Ninth Circuit is clear that "a district court may not weigh conflicting expert evidence or engage in 'statistical dueling' of experts." Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1229 (9th Cir. 2007); *accord*, Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 393 (2d Cir. 1999). As District Judge Patel noted in Kurihara v. Best Buy Company, Inc., 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. 2007):

14
15
16
17
18
19
20

An evidentiary hearing on class certification is not required, Bouman v. Block, 940 F.2d 1211, 1232 (9th Cir. 1991), and the court should not weigh conflicting expert evidence. See, e.g. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 292–93 (2d Cir. 1999). At this early stage, robust gatekeeping of expert evidence is not required; rather the court must query only whether expert evidence is "useful in evaluating whether class certification requirements have been met." Dukes v. Wal-Mart, Inc., 222 F.R.D. 189, 191 (N.D. Cal. 2004).

21
22
23
24
25
26

Kurihara, 2007 U.S. Dist. LEXIS 64224 at *13.  If, as Chevron claims, its own payroll records have some "human error" inaccuracies, it is unquestioned that Dr. Safir can produce an accurate estimate of the minimum amount due each Class Member.  That is legally sufficient.  Anderson v. Mt. Clemens Pottery, 328 U.S. 680 (1946), *superseded by statute on other grounds*, leaves no doubt that an award of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA:

27
28

1        The employer cannot be heard to complain that the damages lack the exactness

2    and precision of measurement that would be possible had he kept records in accordance

3    with the requirements of § 11(c) of the [FLSA]. . . . *Nor is . . . [an award] to be*

4    *condemned by the rule that precludes the recovery of uncertain and speculative damages*.

5    Anderson, 328 U.S. 680 at 688 (emphasis supplied). See also Brock v. Seto, 790 F.2d 1446, 1448 (9th

6    Cir. 1986). Of course, Chevron does not suggest how an employee might falsify his or her time card in a

7    case of this nature. Chevron's records reveal the shifts when employees worked alone, and, *on all such*

8    *shifts*, the employees worked through their rest periods and meal breaks. Simply put, there is no issue of

9    employee falsification of time cards. It is a complete red herring.

10        Of course, under the FLSA, an employee who seeks to recover unpaid wages "has the burden of

11    proving that he performed work for which he was not properly compensated." Brock v. Seto, 790 F.2d

12    1446, 1447–48 (9th Cir. 1986). However, "an employee has carried out his burden if he proves that he

13    has in fact performed work for which he was improperly compensated and if he produces sufficient

14    evidence to show the amount and extent of that work as a matter of a just and reasonable inference."

15    Anderson, 328 U.S. at 687. The burden then shifts to the employer to show the precise number of hours

16    worked or to present evidence sufficient to negate "the reasonableness of the inference to be drawn from

17    the employee's evidence." Id. at 687–88. Anderson teaches that, when an employer's records are

18    inaccurate or inadequate' the solution is not to penalize the employee by denying him or her any

19    recovery on the ground that he or she is unable to prove the precise extent of uncompensated work.

20    Such a result would place a premium on an employer's failure to keep proper records in conformity with

21    the statutory duty, and it would allow the employer to keep the benefits of an employee's labors without

22    paying due compensation. In such a situation, an employee has carried out his or her burden if he or she

23    proves that he or she has, in fact, performed work for which he or she was improperly compensated and

24    if he or she produces sufficient evidence to show the amount and extent of that work as a matter of just

25    and reasonable inference. The burden then shifts to the employer to come forward with evidence of the

26    precise amount of work performed or with evidence to negative the reasonableness of the inference to be

27    drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then

28    award damages to the employee, even though the result be only approximate. In the matter presently

before the Court, Chevron has done nothing to negative the reasonableness of the inference that Chevron's other employees received the same treatment as Plaintiff.  Furthermore, as clearly held in the Ninth Circuit case of <u>Rural Fire Protection Co.</u>, which case involved an employee's claim for hours worked under the FLSA, where an employer relies on its own records "for years for purposes such as income tax, social security, and insurance, it can hardly now claim that its records are improper."  As Chevron, no doubt, has found its records adequate for years for purposes such as income tax, social security, and insurance, it can hardly now claim that its records are improper.[1]

Moreover, contrary to Chevron's insistence, collective actions can be brought and maintained on behalf of employees in various positions and locations.  A Ninth Circuit case illustrates the appropriate approach.  In <u>Thiebes v. Wal-Mart Stores, Inc.</u>, 1999 U.S. Dist. LEXIS 18649 (D. Or. 1999), the plaintiffs alleged that Wal-Mart engaged in a practices of encouraging hourly workers to work off the clock and of altering time cards to reduce overtime obligations.  <u>Thiebes</u>, 1999 U.S. Dist. LEXIS 18649 at *2.  In seeking to proceed as a collective action under the FLSA, the *two* named plaintiffs relied on *only* their own testimony as evidence that they and potential plaintiffs were victims of a common scheme that violated the law.  <u>Id.</u> at *8–9.  The court found the showing sufficient at the *notice* stage—the stage at which the matter presently before the Court is—and approved their request for discovery and opt-in notice.  <u>Id.</u> at  *9 ("I emphasize that I am certifying the collective action only for notice and discovery purposes.  I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated to plaintiffs—far too little discovery has been taken for me to make such a determination now.  Furthermore, should discovery reveal that plaintiffs are not similarly situated to some or all of the persons who may choose to opt in,  I may later decertify the class or divide the class into subgroups, if appropriate.")

By attempting to implement a stricter standard than what is required, Chevron attempts to eviscerate the broad remedial purposes of the FLSA.  But even under the higher standard utilized after

---

[1] Likewise, California also requires employers to maintain such records under Labor Code section 226.  Given section 226, it is inherent that an employer must keep records of an employee's work, as there are a number of purposes for which the employer is relying upon the data.  Thus, Chevron's argument that the calculation of employees' damages requires individual inquiry amounts to nothing more than an attempt to evade statutory responsibilities under the FLSA.

PL.'S MEM. OF P. & A. IN REPLY TO DEF.'S OPP'N TO MOT. FOR CERTIFICATION OF COLLECTIVE ACTION

discovery is complete, opt-in plaintiffs "need only show that their positions are similar, not identical, to those of the named plaintiffs." Federal Procedure, Lawyers Edition § 50:826. "[T]his requirement has been interpreted not to require that positions and claims of employees be *identical*, but rather to permit employees to bring an action on behalf of themselves and others even *though their individual claims are separate and distinct*, and are different as to unimportant details." Federal Procedure, Lawyers Edition § 52:1698 (citation omitted) (emphasis supplied). In fact, "[t]he court's determination will not be governed by how much or what degree of similarity there may or may not be; rather, the court will permit a suit on behalf of similarly situated employees if there is *any* similarity." Id. (citation omitted) (emphasis supplied). Thus, "employees of one class or department may bring suit on behalf of themselves and employees in another class or department." Id. (citing Crain v. Helmerich and Payne Intern. Drilling Co., 1992 WL 91946 (E.D. La. 1992), for holding that employees were similarly situated "despite having worked in different areas of the country, on different types of rigs, and performed different jobs"); Thiessen, 267 F.3d at 1107 (finding similar situation despite "'highly individualized' defenses" available to the defendant).

The analysis of whether the employees are "similarly situated" has little, if anything, to do with the nomenclature that Chevron uses to describe a position. Rather, even during the second-phase analysis, the inquiry is whether the positions are "similar, not identical, to those of the named plaintiffs," Federal Procedure, Lawyers Edition § 50:826, and whether a common policy or plan that violates the FLSA exists with respect to the putative collection-action members.

Plaintiff's evidence is sufficient to show a common plan. Chevron takes issue with the substance of Plaintiff's evidence, pointing to the limited number of Declarations submitted. But these arguments are insufficient to deny *conditional* certification, and Chevron submits no counter-declarations or other evidence showing that the wrongful conduct did not exist. Chevron's arguments might have some weight if accompanied by declarations showing that its employees' overtime wages were computed using base rates that gave proper consideration to wages owing on account of missed breaks and shift differentials. Unfortunately for Chevron, such evidence is not available. It is undeniable that Chevron did not pay employees who worked alone an additional hour of wages on account of missed breaks. It is also undeniable that Chevron did not properly consider shift differentials. Furthermore, Chevron could

1    not submit a single declaration regarding an hourly employee whose overtime was computed with proper

2    reference to wages earned on account of missed breaks, and Chevron could not submit a single

3    declaration regarding an hourly employee whose overtime was computed with proper reference to shift

4    differentials.  Collectively, Plaintiff's Declarations detail Chevron's acts and omissions.  Chevron

5    provides no evidence that the conduct described in Plaintiff's Declarations ever changed or was not

6    uniform throughout the claims period.  At this *preliminary* stage, the Court must conclude that the

7    common plan has been entrenched for many years.

8         Moreover, Chevron employees performed similar duties, and there are no inherent conflicts

9    among them.  In this regard, Chevron again jettisons the first phase of the Hoffman-LaRoche, Inc.

10   analysis and moves to the second phase, arguing that Plaintiff cannot maintain her collective action

11   because of alleged "highly individualized" inquiries regarding the specific amounts owing to each

12   employee.  (E.g., Def's Opp'n at 8:15–16, 21–24.)  In support, Chevron miscites Reich v. Homier

13   Distributing Co., 362 F. Supp. 2d 1009 (N.D. Ind. 2004).  In Reich, the plaintiff worked as a "sales

14   partner" for the defendant.  Reich, 362 F. Supp. 2d at 1010–11.  The sales partners performed a variety

15   of duties, including conducting inventory, arranging merchandise for sale, operating cash registers,

16   assisting customers, loading and unloading merchandise on company trailers, and cleaning up at the end

17   of trade shows.  Id. at 1011.  The employer argued that the sales partners fell into the "loader exemption"

18   under the FLSA.  Id. at 1013.  The court determined that an FLSA collective action was inappropriate.

19   Id. at 1015.  The employee failed to show that she and the other sales partners were similarly situated

20   because applying the loader exemption to any particular sales partner would depend on that individual's

21   specific duties.  Id.  The discovery required to ascertain those duties would destroy the economy of scale

22   envisioned by the FLSA collective-action procedure, and the employee failed to show that the notice

23   could be fashioned in a way to solve this problem.  Id.  Unlike in Reich, however, liability for Chevron

24   does not "depend . . . on an individual determination of each employee's duties."  Id. at 1013–14.

25        This case is also not remotely similar to another case cited by Chevron, Bell v. Superior Court,

26   158 Cal. App. 4th 147 (2007), in which:

27        The [trial] court noted that the declarations filed by both parties indicated that some

28        employees were permitted to take, and did take, meal and rest breaks, while others did

1    not.  As there was no way of determining which drivers were permitted to take breaks and

2    which were not, individual issues predominated.  The court specifically noted that

3    "[p]laintiffs have not provided the Court with any evidence that there was a Company-

4    wide policy prohibiting rest breaks or meal breaks."

5    <u>Bell</u>, 158 Cal. App. 4th at 160.  In the matter presently before the Court, it simply is not possible for an

6    employee to take a break when working alone.  This is not a case in which "some employees were

7    permitted to take, and did take, meal and rest breaks, while others did not."  <u>Id</u>.  Accordingly, Chevron's

8    claim that the Court will be required to review "existing station video footage to ascertain the number of

9    meal periods actually missed" is absurd.  (Def.'s Opp'n at 9:9–10.)  Only such records as are attached to

10   the Tremblay Declaration (itself attached to the Harris Declaration in Support of Plaintiff's

11   Memorandum in Support of Motion for Certification of Collective Action) and others that the law

12   requires Chevron to maintain need to be reviewed to identify the shifts on which an individual worked

13   alone.  (Harris Decl. Ex. 1 at ¶ 14.)  Again, Plaintiff's expert, Dr. Safir, has reviewed pertinent materials

14   and concluded that "an estimation of FLSA damages that would be due employees who did not receive

15   the correct overtime rate would be fairly straightforward and could be accomplished efficiently on a

16   class-wide basis."  (Harris Decl. Ex. 1 at ¶ 15.)

17   *IV.*    ***Conclusion.***

18   Plaintiff presents a sufficient showing that Chevron employees are similarly situated, at least for

19   purposes of phase one collective action notice and discovery. The Court need not, and should not at this

20   stage, address whether the employees are similarly situated for ultimate certification of the collective

21   action. The Court should certify the requested collective action.

22

23   DATED:  April 22, 2008                              HARRIS & RUBLE

24                                                        /s/
                                                  _____

25                                                       Alan Harris
                                                         *Attorneys for Plaintiffs*

26

27

28

1

### PROOF OF SERVICE

2

I am an attorney for Plaintiff herein, over the age of eighteen years, and not a party to the within action.
My business address is Harris & Ruble, 5455 Wilshire Boulevard, Suite 1800, Los Angeles, California

3

90036.  On April 22, 2008, I served the within document(s):  **PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION OF**

4

**COLLECTIVE ACTION**.

5

I caused such document(s) to be delivered by hand in person to:

6

    N/A

7

I caused such document(s) to be delivered by fax or e-mail to:

8

    N/A

9

I am readily familiar with the Firm's practice of collection and processing correspondence for mailing.

10

Under that practice, the document(s) would be deposited with the U.S. Postal Service on that same day
with postage thereon fully prepaid in the ordinary course of business, addressed as follows:

11

    N/A

12

I caused such document(s) to be delivered via the Court's CM/ECF System to:

13

    Deborah Crandall Saxe

14

    dsaxe@jonesday.com

15

    Catherine Suzanne Nasser
    cnasser@jonesday.com

16

    Aaron L. Agenbroad

17

    alagenbroad@jonesday.com
    saltamirano@jonesday.com

18

I declare under penalty of perjury that the above is true and correct.  Executed on April 22, 2008, at Los

19

Angeles, California.

20

                               /s/

                           David Zelenski

21

22

23

24

25

26

27

28

PL.'S MEM. OF P. & A. IN REPLY TO DEF.'S OPP'N TO MOT. FOR CERTIFICATION OF COLLECTIVE ACTION