UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ELIZABETH D. LAPORTE, JUDGE

```
----------------------------)
                            )
CATHERINE TREMBLAY,         )
                            )
              Plaintiff,    )
                            )
     v.                     )      No. C 07-6009 (EDL)
                            )
CHEVRON STATIONS, INC.,     )
                            )
              Defendant.    )      San Francisco, California
                            )      Tuesday, May 6, 2008
----------------------------)          (22 pages)
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:          Harris & Ruble
                        5455 WIlshire Boulevard
                        SUite 1800
                        Los Angeles, California 90036
                  BY:   ALAN HARRIS
                        DAVID HARRIS

For Defendant:          Jones Day
                        555 California Street
                        26th Floor
                        San Francisco, California 94104
                  BY:   AARON L. AGENBROAD
                        CATHERINE SUZANNE NASSER

1    Tuesday, May 6, 2008

2                                                          (9:27 a.m.)

3            DEPUTY CLERK:  Calling 07-6009, Katherine Tremblay

4    versus Chevron Stations.

5            Counsel, please state your appearances for the record.

6            MR. AGENBROAD:  Aaron Agenbroad and Cathy Nasser for

7    Defendant Chevron.

8            THE COURT:  Good morning.

9            MR. A. HARRIS:  Alan Harris and David Harris for the

10   plaintiff.

11           THE COURT:  Good morning.  Let me tell you, I'm a

12   little concerned in this case that on the one hand, the showing

13   under the two stage procedure is -- really only needs to be

14   fairly minimal, but it does require some factual support

15   showing that there's more than just the plaintiff that has the

16   problem.  And that's where I think, although it's, you know,

17   certainly the norm that the plaintiff passes the threshold, I'm

18   not sure that that threshold is met here.

19           And on the other hand, I suspect that it could be met,

20   and relatively easily, because it seems to me maybe here even

21   one or two more declarations or a little bit of discovery, not

22   full-fledged discovery, could well provide enough.  I mean,

23   there might be -- there's, I think, two different theories that

24   you have, although they can be joined together, as to why there

25   was underpayment.  You know, one being this split differential.

1    As I understand it, if somebody works both day and night and

2    the night pay is higher, then to the extent that there's

3    overtime on top of that, that's got to be calculated.  I mean

4    that's the kind of thing that one could see it's done by

5    computer.  It's shown on at least one record of plaintiff.  I

6    want to know whether it's shown on any of the other pay records

7    she has there, which were -- the way they're Xeroxed, I can't

8    even read them really and they're not explained very much.  But

9    they could be -- I mean, they could be explained, and nobody's

10   really contesting at least one of them she's paid the wrong way

11   on that, at least if you're right on the theory and right now

12   I'm not making a determination on the merits.  And if that was

13   the practice -- you know, presumably, it would be odd in a big

14   corporation if that wasn't a practice that applied to at least

15   some other people, but you've given no evidence at all of that.

16        And I look at the other cases and really every single

17   case has at least two or three declarants.  Sometimes it's

18   cause -- you know, and often there's many, many more.  The

19   expert doesn't count as a declarant -- I mean, he's just

20   opining on the evidence the plaintiff has.  He's not talking

21   about evidence involving other employees.

22        So that's where I'm having a problem.  The -- maybe

23   it's -- the other theory, I guess, is that, you know, people

24   miss their meal breaks and if they'd had their meal breaks

25   they'd have even more time, I think is what you're saying.

1          MR. A. HARRIS:  Yes, your Honor.  If we look, for

2     example, at Exhibit 1 to Dr. Safire's declaration, it is the

3     weekly in-station time sheet -- Dr. Safire's declaration is an

4     exhibit to my declaration.  They're all put together.

5          THE COURT:  So you need to have both her pay stub and

6     her time sheet to make this conclusion.

7          MR. A. HARRIS:  If we look at this weekly in-station

8     time sheet, your Honor, you'll see these are various employees

9     who worked at this one store.  And we can see Miss Tremblay is

10    the third one down.  And she did not work, for example, on

11    Thursday, the fourth day, and that was worked alone by the

12    person below her whose name I -- I can't really read from this,

13    but it is apparent that when you're working the graveyard

14    shift, per force, it is impossible for any employee to take an

15    uninterrupted rest period.

16         THE COURT:  Well, I want to -- let's just stop for a

17    minute because I want to hear you and the other side on that

18    because it seemed to me at least theoretically if you're

19    working the graveyard shift, this is a gas station, and nobody

20    comes by during your period that you could take an

21    uninterrupted break.  Unless legally that's not considered a

22    break because you're certainly on-call.

23         MR. A. HARRIS:  You're on-call the entire time.  And

24    from the -- obviously, from the point of view of the employer,

25    you know, you say, well, the person's just standing there hour

```
1    after hour.  But when you're looking at it from the point of

2    view of the employee and the law, and although we're not

3    getting to the merits today, the employee has to have an

4    uninterrupted rest break.  And it --

5          THE COURT:  But is it uninterrupted or

6    Uninterruptible?  In other words --

7          MR. A. HARRIS:  Uninterruptible.  They have to be just

8    go off on their own and not be interrupted.  And under the

9    Chevron policy, they're not permitted to leave the station.

10          THE COURT:  Where is the evidence of the policy?

11   That's another thing that all the other cases have, is policy.

12   Evidence of a policy.  So -- I mean, the problem I have is you

13   are making assertions that I think you might be able to back up

14   sufficiently, it's a very minimal standard, with very little

15   more effort.  But you haven't -- I mean, we've got one very

16   brief declaration from the plaintiff, which doesn't even

17   include all the allegations, doesn't support all the

18   allegations in her complaint even, and nothing from any other

19   worker or supervisor.  Not even one other.  And that -- I

20   haven't seen any cases with that slim a showing.

21          MR. A. HARRIS:  I think the defense cases were

22   principally the cases where discovery had been pretty much

23   completed.

24          THE COURT:  But some of them, it had just -- I mean, I

25   didn't stay discovery here, right?  You could be doing
```

1    discovery.  And if I turn down this motion now, I would think

2    that would be without prejudice to doing a little bit of

3    discovery and coming back.  In other words, I don't think it

4    takes very much, but I'm just not sure you've gotten that far.

5         MR. A. HARRIS:  I truly think that maybe the

6    defendants will stipulate now on the record that the people

7    working on the graveyard shift by themselves, you know, that

8    there's more than one of them.  Because obviously that's true

9    and that --

10        THE COURT:  I'm sure it's true.  And I mean, this is,

11   I have to say, on the defense side, this is what bothers me, is

12   that I suspect that if I grant your motion, it's all a

13   meaningless exercise really, that we'll be back in a couple of

14   weeks and the plaintiffs will have made enough of a showing.

15        MR. AGENBROAD:  I think, your Honor, there's a couple

16   of things.  One is the class he's seeking to certify at this

17   point is much broader than just the people that work the night

18   shift.  If you look at his papers, what he specified was any

19   employees whose overtime was underpaid due to Chevron's failure

20   to compute properly the correct overtime rate, which include

21   both his meal-period people as well as his shift-differential

22   people.

23        THE COURT:  I do think -- I mean, the class is

24   probably too broadly defined.  We've got to talk about

25   geography.  I think you're pretty much conceding it should be

```
1    California, right?
2            MR. A. HARRIS:  Yes, we would want to limit it to the
3    employees to worked in California on the graveyard shift.
4    Because only they would have the shift differential issue and
5    only they are the individuals who were working without benefit
6    of an uninterrupted rest break.
7            THE COURT:  Now, would you want it so it's who worked
8    on the graveyard shift, at least in part, including those who
9    also worked on other shifts?
10           MR. A. HARRIS:  Yes -- well, it's not necessary that
11   they worked on other shifts, because they're in the group.
12           THE COURT:  It's not necessary, but it's sufficient.
13   In other words, as long as they worked on the graveyard shift,
14   either exclusively or some of the time, that's what you're --
15           MR. A. HARRIS:  Correct, yes.
16           THE COURT:  And what about that?
17           MR. AGENBROAD:  I still think -- I mean, this is
18   getting into the merits a little bit, but certainly there's
19   support out there for the proposition that if it's infeasible
20   for the employee to take a meal period, and the example in the
21   regs, at least, is an individual employee at an all-night
22   convenience store, which is very analogous to the graveyard
23   shift at a gas station, whether you even have that.
24           So -- the shift differential also is a little bit
25   different.
```

1          THE COURT:  Did I follow you?  Are you conceding that

2     if somebody is alone on a graveyard shift, there could be an

3     issue as to whether that complies with the overtime laws?

4          MR. AGENBROAD:  I'm not conceding that, no.

5          THE COURT:  Then I don't understand.  I thought you

6     just said there was an example.  Say that again.

7          MR. AGENBROAD:  Absolutely.  Plaintiff's theory is

8     that anybody who worked a graveyard shift was improperly denied

9     a meal period.  And again, this gets to the merits.  This isn't

10    necessarily a certification piece.  But there's support out

11    there for the proposition that if it's infeasible for the

12    employee to take a meal period, you can have on-duty paid meal

13    period and not be in violation of the regs.

14         THE COURT:  Okay.

15         MR. A. HARRIS:  But there's no such authority for the

16    rest period, so when you're denied a rest period, you're

17    entitled to an additional hour of wages, and it's clear that

18    all the people who worked alone on the graveyard shift were

19    denied their rest periods.

20         THE COURT:  Stop for a second.  So do you agree with

21    that?

22         MR. AGENBROAD:  No.

23         THE COURT:  It is a disputed issue, though I would go

24    ahead and conditionally certify it.

25         MR. AGENBROAD:  It certainly is disputed.  And I would

1   just agree with you as far as maybe we will end up back here,

2   plaintiffs have had the opportunity to take whatever discovery

3   you wanted.  I do think you're exactly right that their showing

4   at present isn't sufficient for the conditional certification,

5   even the cases that they've relied upon, you know, Grace and

6   Juravich, Thebes, Hoffman -- every one of those had more than

7   one affidavit, multiple affidavits, statistical evidence, more

8   specific declarations.

9        Miss Tremblay's affidavit doesn't alleged anything

10  about a common practice or any similarly-situated individuals.

11  All she asserts is that she believes that, My individual claims

12  are typical of the claims of the members of the class as a

13  whole.  And there's problems even with that.

14       THE COURT:  It's extremely conclusory, but the thing

15  I'm frustrated by -- I'm, on the other hand, am not interested

16  in having a prolonged process where we keep doing this over and

17  over, and I really suspect on your side, I mean -- and I want

18  to know and I'm asking you, so you're not volunteering, but I'm

19  asking you -- is this the policy in California?

20       MR. AGENBROAD:  The policy, that people that work the

21  graveyard shift do not take meal periods?

22       THE COURT:  Are not paid for rest periods or meal

23  periods.

24       MR. AGENBROAD:  They're paid for all hours worked

25  including meal periods for people on graveyard shift.

1            THE COURT:  What about the rest period?

2            MR. AGENBROAD:  They have the opportunity to take a

3    rest period.

4            THE COURT:  But they're not paid extra if they don't

5    take one.

6            MR. AGENBROAD:  That's correct.

7            THE COURT:  And that's where there's a dispute.

8            MR. AGENBROAD:  The rest period standard is a little

9    different.  It's the authorized and permit.  If they have the

10   opportunity to take the time the 10 minutes during their shift,

11   certainly the courts have already indicated that that's not a

12   provide standard but an authorized and permit standard.  And

13   again we're careening into the merits here.

14           THE COURT:  So I understand there's a dispute on the

15   merits, but is this the same throughout California?

16           MR. AGENBROAD:  Yes.

17           THE COURT:  And on the payment issue of the blended

18   rate, you know, you say the plaintiff doesn't show whether this

19   could be some aberration or mistake or an isolated incident,

20   which seems very implausible, I mean, that there's some flaw in

21   the software or something like that that's used in payroll.  I

22   mean, I find it hard to believe.  Is it an isolated incident or

23   is this the way it's calculated and you should be fighting

24   about the merits?

25           MR. AGENBROAD:  We're still investigating.  As near as

1    we can tell, any group that this would impact would actually be

2    even narrower than graveyard people because it would only be

3    graveyard people -- or individuals who worked both the

4    graveyard shift and the daytime shift during the same week and

5    were -- worked overtime during that week on the graveyard

6    shift.  If they worked during the daytime, they wouldn't be in,

7    if they didn't work overtime, they wouldn't be in.  It would

8    only be that limited subset of people.

9         THE COURT:  I think you would agree with that.

10        MR. A. HARRIS:  I would agree with that, your Honor,

11   and I think we send -- if we send the notice to those who

12   worked than the graveyard shift, we will capture the subclass

13   also of those who worked the shift differential issue, as the

14   gentleman described.  And so it is a -- I don't believe that

15   all people who worked the graveyard shift necessarily suffered

16   from that second violation.  But it's a subclass and really

17   something we will find out after they're given the opportunity

18   to opt in.  And so I think it's clear from our discussion this

19   morning it's really undisputed that in California there is a

20   policy that the employees are not provided an additional hour

21   of pay for their missed rest periods.  We don't get to the

22   legal issue now.

23        THE COURT:  Is that undisputed?

24        MR. AGENBROAD:  That's correct.

25        THE COURT:  Okay.  And is it also undisputed that in

 1  California, employees who work the graveyard shift and on top

 2  of that also work daytime in the same week and have some

 3  overtime are not paid a blended rate for overtime, the

 4  overtime's not calculated --

 5          MR. AGENBROAD:  They're paid a blended rate, certainly

 6  in this one instance with Miss Tremblay it was not paid -- it

 7  appears that it was not calculated correctly.  As far as other

 8  individuals, the investigation's ongoing so we haven't polled

 9  that yet.

10          THE COURT:  You must know whether there's anyone

11  beside her who's been paid that improperly calculated blended

12  rate.

13          MR. AGENBROAD:  I don't know that definitively.

14          THE COURT:  How about her at different times?

15          MR. AGENBROAD:  I believe this is the only incident

16  with Miss Tremblay.

17          THE COURT:  That's the only one you found?

18          MR. A. HARRIS:  That's the only one we found.

19          MR. AGENBROAD:  She's a short-term employee.

20          THE COURT:  I know.  From a case management viewpoint,

21  I don't want to go through a series of motions to dismiss which

22  lead to a conditional certification and just delay and drag out

23  the case.  You know, my feeling is you didn't cross the

24  threshold, but it's so easy to do so.  You can probably do it

25  with a couple more -- a couple of, you know, one 30(b)(6)

1   deposition maybe or some documents.

2          MR. A. HARRIS:  I think we crossed the threshold this

3   morning in our argument.  In the last five minutes, the

4   gentleman has conceded that in California the employees are not

5   provided with an additional hour of pay when they miss their

6   rest period.

7          THE COURT:  I guess that probably does do the missed

8   rest period issue, but I mean, we also have to -- I mean,

9   doesn't that -- if there is a policy that applies, I think

10  that's enough.  Usually in cases it has to be established

11  through, you know, declarations.  But I think if it's

12  undisputed...

13         MR. AGENBROAD:  They're not paid an extra hour for

14  missed meal periods.

15         THE COURT:  So that would result in a conditional

16  certification for people who, in California due to graveyard

17  shift, we have to talk about dates and so on, but we ought to

18  handle both of these things at the same time probably.  Which

19  is also -- I mean, if we're going to send out one notice, not

20  two, we need to find out whether there is -- whether this

21  was -- which seems highly unlikely, one employee, one-time

22  mistake.  It just -- I mean, it sort of boggles the mind that

23  the computer is either programmed to calculate it one way or

24  the other.  Is it the only time she was in that situation where

25  she hit the threshold and worked both day and night?

```
 1            MR. A. HARRIS:  Yes, your Honor.

 2            THE COURT:  It seems to me incredibly implausible

 3    there wouldn't be at least some other people in that situation.

 4            MR. AGENBROAD:  We had requested a broader period of

 5    discovery prior to reaching the conditional certification which

 6    plaintiff's counsel opposed.

 7            THE COURT:  That's true.

 8            MR. AGENBROAD:  So we're amenable to that and you

 9    know.

10            THE COURT:  I would like to have something done in the

11    next two or three weeks and then, you know, get a conditional

12    certification that addresses both of these issues out,

13    promptly.  I mean, I know they were concerned about foot

14    dragging or the statute of limitations.  Now you have yourself

15    to blame to the extent though you didn't use the time to get

16    enough evidence.

17            MR. A. HARRIS:  Well your Honor as a practical matter,

18    the dollar consequence of these violations falls most heavily

19    with respect to the missed rest periods.  The relief for the

20    class of people who worked for them with respect to the

21    missed -- the improperly calculated shift differential, the

22    dollar amount there is not that great.

23            THE COURT:  But you may be on strong legal grounds.

24            MR. A. HARRIS:  We may be on stronger legal grounds,

25    that's true, but it seems to me if we craft the notice to say
```

1    that we're certifying a class with respect to improperly

2    computed overtime rates and just leave it at that, we can go

3    forward today.  In other words, I don't see why we have to kind

4    of go to the substantive issue on this subclass where there are

5    not huge dollar issues involved.  It seems to me that it's kind

6    of obvious that we're going to have certification of the class

7    of the people who worked on the graveyard shift.  So perhaps we

8    just craft the notice to say, to be general and say, this has

9    been certified with respect to improper computation of the

10   overtime rate.  Then the defendant can go ahead and get the

11   names and addresses ready to get to Gilardi, which will take a

12   short period of time, and we can go ahead with the notice.  And

13   then --

14           THE COURT:  Well, I mean, it is true that we are

15   talking about a class and a subclass, aren't we?

16           MR. AGENBROAD:  That would be true.  I mean, much

17   narrower than anybody whose overtime was miscalculated.

18   Because again, and I think this morning --

19           THE COURT:  People who worked the graveyard.

20           MR. AGENBROAD:  The graveyard shift, correct.

21           THE COURT:  But if we said people who worked the

22   graveyard shift whose overtime was miscalculated, wouldn't that

23   be -- in California, and then we need to do the number of

24   years.  Wouldn't that be the correct --

25           MR. AGENBROAD:  And I guess limiting it to the issues

1    as far as both the meal period and then -- I mean the subclass

2    for the shift differential, again, would only be those

3    individuals who worked a graveyard shift and a day shift in the

4    same week and were paid -- worked overtime on the graveyard

5    shift.

6            THE COURT:  Are you suggesting we go ahead and put

7    both of those in the notice now, or do you want to continue to

8    fight about it and have a 30(b)(6) deposition or something?  Do

9    a document request, which I would make you respond to very

10   quickly, because I find it very hard to believe that with all

11   this time, you don't know whether some of the other

12   plaintiffs -- I find that difficult to believe and I think it's

13   unlikely.  You know, it just seems implausible.

14           To err is human, but we're talking about payroll

15   records.

16           MR. AGENBROAD:  I understand, and part of the issue

17   is, a lot of this is performed by outside vendors so it's not

18   something that Chevron directly controls.  I think it's ADP

19   that controlled the service.

20           THE COURT:  If it were there --

21           MR. AGENBROAD:  We'll see about that.  I don't dispute

22   the fact that we could probably resolve this quickly.  I mean,

23   we were the side that was looking to have that more detailed

24   examination.

25           THE COURT:  I want to get on to the other cases

1  waiting, but I also want to not have you have to come back and

2  back and hash these things out slowly.  It seems to me maybe

3  there is a way you can meet and confer and hash this out right

4  now about a notice.  I'm just not sure it's worth the expense

5  to either side, you know, to sort of do further motion

6  practice.

7           MR. AGENBROAD:  I don't disagree with that.  And even

8  this morning before we started we got a chance to start working

9  through our disputes on the notice itself.  So I'd suggest an

10  opportunity, limited timeframe so we don't slow things down,

11  meet and confer, hash out what the subclass is, what the notice

12  should look like.  And if we can't resolve it, then --

13           THE COURT:  What I'm going to suggest is you start

14  that process right now, and maybe you can finish it by the time

15  I hear these other few matters.  If you can you can't at least

16  narrow your disputes, and I may or may not give you a day or

17  two, but I can give you some comments on some of the notice

18  issue.  I mean, sort of tentative rulings.

19           MR. A. HARRIS:  The key one that we were talking about

20  is, first of all, the defense wants to have the -- what I view

21  is an interim comment:  You may also be held liable for costs

22  associated with this lawsuit.

23           THE COURT:  If you look at -- Judge Wilkin had a case

24  in which she addressed that, that I was reading unfortunately

25  last night, and she basically said, You can have some language

1    to that effect, but you have to spell out that it does not

2    include attorney's fees, and it only includes really a very

3    limited subset of costs.  And something that was refined like

4    that might pass muster.

5              MR. A. HARRIS:  My problem with that, your Honor, is

6    that in reality, as a practical matter, if we look at the

7    substance of the matter, if the defendant wins the case, I'm

8    going to pay the costs.  And --

9              THE COURT:  You know, maybe if you make a --

10             MR. A. HARRIS:  I'd say that on the record.

11             THE COURT:  Maybe there's some way, if you put a

12   filing down or something like that, or it may be that it's -- I

13   mean -- or it may be that -- I mean technically, they are

14   liable.  And I know in practice the plaintiff's attorney pays

15   it.  Now, I don't know if you went bankrupt or something, which

16   I have no reason to think you would, they'd be taken off the

17   hook.  This is done all the time in the other cases.  You all

18   know what those orders say; I don't.

19             But I wouldn't be averse to saying as a practical

20   matter this never happens -- well, not never, but it's highly

21   unlikely because the plaintiff's attorney has filed a

22   declaration with the Court that he will cover the costs.  And

23   then you file that declaration.  In other words, I agree that

24   it could be misconstrued in a way that would be misleading, and

25   my concern is not to mislead in favor of either party, to be

1    completely truthful, but without being so lengthy that nobody

2    will read it.  Which is the other side.

3            Any other big dispute that you have?

4            MR. A. HARRIS:  The other question was in the same

5    paragraph where the defense wants to say:  By joining the

6    lawsuit, you designate the class representative as your agent

7    to make decisions on your behalf concerning the litigation, the

8    method and manner of conducting this litigation, the entering

9    of an agreement with plaintiff's counsel concerning fees and

10   costs, and all other matters pertaining to this lawsuit.

11           These decisions made and entered into by the

12   representative plaintiff will be binding on you when you join

13   this lawsuit.  And the reality is that that's just not the way

14   it works.

15           THE COURT:  But that doesn't sound right to me, but

16   that wasn't really briefed, but it sounds to me -- that's kind

17   of an overstatement.  For one thing, the class could be

18   dissolved later.  It's only conditional.  I think it make clear

19   it's conditional certification.  And I think the Court has some

20   input into what fees class counsel has and you've got duties of

21   the class and so forth and so on.  So that seems to be not

22   quite accurate.

23           MR. A. HARRIS:  We'll go out in the hall.

24           THE COURT:  I'll let you even have our jury room,

25   fancier than the hall.  And you know, either -- if you're

1    ready, you can come back and notify us; or if we're done, we'll

2    come back and get you.

3              MR. A. HARRIS:  Thank you very much.

4              MR. AGENBROAD:  Thank you.

5              (Recess)

6              DEPUTY CLERK:  Recalling civil 07-6009, Catherine

7    Tremblay versus Chevron Stations.

8              MR. A. HARRIS:  Alan Harris and David Harris for the

9    plaintiff.

10             MR. AGENBROAD:  And Aaron Agenbroad and Catherine

11   Nasser for Defendant Chevron.

12             THE COURT:  Thanks.

13             MR. A. HARRIS:  Your Honor, we have agreed on a form

14   of notice and we're going to go back to the office immediately

15   and get it retyped and then we will submit it for your Honor's

16   approval.

17             I don't think you will, as a practical matter, have

18   any questions regarding it.  I think we've covered all the

19   basis so --

20             THE COURT:  If I do, I'll ask.  All right.

21             MR. A. HARRIS:  We've agreed to provide 45 days from

22   the date of mailing by Gilardi for the people to respond.  And

23   so that should be a fairly seamless process.  And I think we're

24   under way now.

25             MR. AGENBROAD:  Yes.

```
1              THE COURT:  And was there still an issue about whether
2    you could have access to the names and contact information?
3              MR. A. HARRIS:  Well, I don't think that's an issue as
4    far as the notice is concerned.
5              THE COURT:  Right.
6              MR. A. HARRIS:  Obviously we have to -- we can't do
7    the case if we don't know -- I mean, we have to know who is
8    opting in.  People who haven't opted in, that's fine, but at
9    this stage -- you know, that may be an issue later.  But I have
10   no interest in knowing -- getting the contact information.
11   We'll have now have people to talk to with the people who opt
12   in.
13             THE COURT:  All right.  That's fine.
14             MR. A. HARRIS:  So that's not an issue at this point.
15             THE COURT:  Is there anything else?
16             MR. AGENBROAD:  I don't believe so.
17             MR. A. HARRIS:  That's all, your Honor.
18             THE COURT:  So you'll prepare a joint order and
19   proposed notice.
20             MR. AGENBROAD:  Yes.
21             MR. A. HARRIS:  Yes.
22             THE COURT:  Thank you.
23             MR. A. HARRIS:  Thank you very much.
24             MR. AGENBROAD:  Thank you, your Honor.
25             (Adjourned)
```

CERTIFICATE OF REPORTER

I, Connie Kuhl, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in Case No. C 07-6009(EDL), Catherine Tremblay, et al. v. Chevron Stations, Inc., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Connie Kuhl, RMR, CRR

Friday, May 30, 2008