Deborah C. Saxe (State Bar No. 81719)
dsaxe@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

Aaron Agenbroad (State Bar No. 242613)
alagenbroad@jonesday.com
JONES DAY
555 California Street
26th Floor
San Francisco, CA 94104
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

Attorneys for Defendant
CHEVRON STATIONS INC.

Alan Harris (State Bar No. 146079)
law@harrisandruble.com
David Zelenski (State Bar No. 231768)
dzelenski@harrisandruble.com
5455 Wilshire Boulevard, Suite 1800
Los Angeles, CA 90036
Telephone:  (323) 931-3777
Facsimile:  (323) 931-3366

Attorneys for Plaintiff
CATHERINE TREMBLAY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Catherine Tremblay, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Chevron Stations, Inc., a Delaware Corporation,<br><br>Defendant. | **CASE NO. CV 07-6009 EDL**<br><br>**UPDATED JOINT CASE MANAGEMENT STATEMENT**<br><br>Complaint Filed: November 28, 2007 |

1

**JOINT CASE MANAGEMENT STATEMENT**

**1.  Procedural history and current status of the case.**

Plaintiff Catherine Tremblay worked for Chevron Stations, Inc. ("Chevron") for approximately five months. She was employed at Chevron's Station 1759, which is a gas station in Santa Rosa, California. Her employment was involuntarily terminated in April 2007.

Plaintiff frequently worked the "graveyard shift," which is an 8-hour shift that begins at 10:00 p.m. and ends at 6:00 a.m. During those hours, Plaintiff usually was the only employee in the station.

Plaintiff has filed a Complaint in which she seeks to represent a class consisting of all employees of Chevron in California who ever received a paycheck during the time period beginning 4 years before the Complaint was filed. She alleges that Chevron did not provide meal and rest periods for her or the absent Class Members in accordance with the applicable Wage Order, did not pay her or the absent Class Members all wages due at termination of employment in accordance with the requirements of California Labor Code § 201 or § 202, did not issue paystubs to her or absent Class Members that comply with California Labor Code § 226, did not pay all minimum wages and overtime compensation due pursuant to state law and the federal Fair Labor Standards Act ("FLSA"), and violated California Business & Professions Code § 17200 by engaging in these alleged unlawful acts.

On March 13, 2008, Plaintiff filed a First Amended Complaint with an additional cause of action pursuant to the Labor Code Private Attorneys General Act ("LCPAGA"). The First Amended Complaint contends that the above-described alleged violations subject Chevron to civil penalties under § 2698 *et seq.* of the California Labor Code. In April 2008, Chevron filed an Answer to the First Amended Complaint. Also in April, Plaintiff filed a Motion for Certification of Collective Action with respect to her above-described allegations concerning the FLSA. The Court granted conditional certification of a class consisting of current and former employees of Chevron who worked one or more graveyard shifts in one of the Company's California stations.. Gilardi & Co. LLC ("Gilardi") was selected by the parties as the Claims Administrator for purposes of providing notice to all Collective-Action Members, and, on June 11, 2008, Gilardi mailed (1) Notices of Pendency of Federal-Law Fair Labor Standards Act Collective Action

("Notices") and (2) Opt-In Forms Pursuant to 29 U.S.C. § 216(b) *et seq.* ("Opt-In Forms") to Collective-Action Members. According to Gilardi, 8,989 Notices and Opt-In Forms were mailed to Collective-Action Members, and, as of the opt-in deadline, 673 Opt-In Forms had been submitted,

**2.    Principal factual issues in dispute.**

1. At any time during the alleged class period, did Chevron have a policy of not providing meal periods for any or all of the non-exempt employees working at its California gas stations as required by Wage Order 7?

2. Did Plaintiff agree with Chevron that she would receive an on-duty meal period (not an off-duty meal period) when she worked alone at the gas station on the 8-hour graveyard shift?

3. Did the nature of Plaintiff's work on the graveyard shift prevent Plaintiff from being relieved of all duty for 30 minutes?

4. Was the nature of Plaintiff's work on the graveyard shift at Station 1759 typical of the nature of the work performed by employees who worked on the graveyard shifts at any of the approximately 300 other Chevron stations in California during any or all of the alleged class period?

5. Was Chevron's failure, if any, to provide a 30-minute off-duty meal period for Plaintiff, who worked on the 8-hour graveyard shift at Station 1759 and who expressly agreed (in writing) that she would not get an off-duty meal period when she worked alone on that shift, related at all to it's alleged failure to provide 30-minute off-duty meal periods for employees who worked the 8.5 hour day and swing shifts at Station 1759 and/or at any of the approximately 300 other Chevron stations in California during any or all of the alleged class period?

6. Did Plaintiff fail to take one or more meal periods during her employment at Chevron? If so, when and why?

7. Did other people who worked as non-exempt employees at Station 1759 during the alleged class period fail to take one or more meal periods during their employment at Chevron? If so, when and why? Did they fail to take them for the same reason Plaintiff did?

8. Did any of the approximately 15,000 people who worked as non-exempt employees at the approximately 300 other Chevron stations during the alleged class period fail to take one or more meal periods? If so, when and why? Did they fail to take them for the same reason Plaintiff did?

9. Did Chevron authorize and permit Plaintiff to take meal periods?

10. Did Chevron authorize and permit other non-exempt employees at Station 1759 to take meal periods during any or all of the alleged class period?

11. Did Chevron authorize and permit non-exempt employees at California stations other than Station 1759 to take meal periods during any or all of the alleged class period?

12. Were Plaintiff's experiences at Station 1759 with regard to meal periods typical of the experiences of those who worked at other Chevron stations in California during any or all of the alleged class period?

13. At any time during the alleged class period, did Chevron have a policy of not providing rest periods for any or all of the non-exempt employees working at its California gas stations as required by Wage Order 7?

14. Did Chevron authorize and permit Plaintiff to take a rest period of at least 10 minutes at the mid-point of each 4-hour period of work (insofar as practicable)?

15. During any or all of the alleged class period, did Chevron authorize and permit other non-exempt employees at Station 1759 to take rest periods of at least 10 minutes at the mid-point of each 4-hour work period (insofar as practicable)?

16. During any or all of the alleged class period, did Chevron authorize and permit non-exempt employees at California stations other than Station 1759 to take rest periods of at least 10 minutes at the mid-point of each 4-hour work period (insofar as practicable)?

17. During her employment at Chevron, did Plaintiff fail to take rest breaks of at least 10 minutes at the mid-point of each 4-hour work period? If so, which rest breaks did she miss, why did she miss them, and would it have been practicable for her take them?

18. During the alleged class period, did other employees at Station 1759 fail to take rest periods of at least 10 minutes at the mid-point of each 4-hour work period? If so, which

4
**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**

employees missed them, which rest breaks did they miss, why did they miss them, and would it have been practicable for them to take the rest breaks they missed?

19. During the alleged class period, did any or all of the approximately 15,000 other employees in the putative class fail to take rest periods during any or all of the alleged class periods? If so, which employees missed them, which rest breaks did they miss, why did they miss them, and would it have been practicable for them to take the rest breaks they missed?

20. Were Plaintiff's experiences at Station 1759 with regard to rest periods typical of the experiences of others who worked at the approximately 300 other Chevron stations in California during any or all of the alleged class period?

21. At any time during the alleged class period, did Chevron have a policy of not compensating any or all of its non-exempt California employees for all time worked?

22. Did Plaintiff accurately record her time on her time card? If not, why not?

23. Did non-exempt employees other than Plaintiff at Station 1759 accurately record time worked on their time cards at all times during the class period? If not, why not?

24. Did any or all of the approximately 15,000 class members who worked at in California at Chevron stations other than Station 1759 accurately record time worked on their time cards at all times during the class period? If not, why not?

25. At any time during the alleged class period, did Chevron fail to pay at least the California minimum wage for all hours worked by Plaintiff? If not, why not?

26. At any time during the alleged class period, did Chevron fail to pay at least the federal minimum wage for all hour worked by Plaintiff? If not, why not?

27. At any time during the alleged class period, did Chevron have a policy of not paying all overtime compensation earned by its non-exempt California employees pursuant to state and/or federal law?

28. Did Plaintiff fail to receive compensation for all overtime hours worked under state and/or federal law? If so, how much overtime compensation is due and why did Chevron fail to pay all overtime compensation due?

/ / / / /

**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**

29. At any time during the alleged class period, did Chevron fail to pay overtime compensation as required by California Labor Code § 510 to any of the approximately 15,000 members of the putative class? If so, which ones, how much overtime compensation was due, and, with respect to each one, why did Chevron fail to pay all overtime compensation due?

30. At any time during the alleged class period, did Chevron fail to pay overtime compensation as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, to any of the approximately 15,000 members of the putative Class? If so, which ones, how much overtime compensation was due, and, with respect to each one, why did Chevron fail to pay all overtime compensation due?

31. At any time during the alleged class period, did Chevron fail to pay overtime wages to Plaintiff or others as required by California Labor Code §§ 204, 514, and/or 1194 (*see* Complaint ¶ 27, which appears to Defendant to be a nonsense paragraph since none of the cited statutes requires an employee to pay overtime compensation).

32. At any time during the alleged class period, did Chevron have a policy of not paying all wages due at termination of employment in accordance with the requirements of California Labor Code §§ 201 and 202?

33. Did Plaintiff fail to receive all wages due upon termination of employment at the time proscribed by California Labor Code § 201? If so, was the non-payment willful or, instead, was it the result of a "good faith" dispute that any wages were due?

34. At any time during the alleged class period, did Chevron fail to pay all wages due to any involuntarily terminated employee other than Plaintiff at the time proscribed by California Labor Code § 201? If so, which involuntarily terminated employee(s) failed to receive all wages due at termination and, with respect to each one, was the non-payment willful or, instead, was it the result of a "good faith" dispute that any wages were due?

35. At any time during the alleged class period, did Chevron fail to pay all wages due to any employee who voluntarily resigned at the time proscribed by California Labor Code § 202 (which requires employers to pay employees who resign all wages due not later than 72 hours after they resign, unless they gave at least 72 hours advance notice of the intention to resign, in

which case they are entitled to all wages due at the time of resignation)?  If so, which employees who resigned did not receive all wages due in a timely manner and, with respect to each one, was the non-payment willful or, instead, was it the result of a "good faith" dispute that any wages were due?

**3.    Principal legal issues in dispute:**

1.    In light of the written waiver signed by Plaintiff (waiving her right to take a 30-minute off-duty meal period when she worked alone at the gas station on the 8-hour graveyard shift) and the language of Wage Order 7 (permitting "on duty" meal periods when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job meal period is agreed to), did Chevron violate California Labor Code § 226.7 by failing to provide an off-duty meal period for Plaintiff when she worked alone at the gas station on the 8-hour graveyard shift?

2.    Is there a private right to sue for an alleged violation of California Labor Code §§ 204, 226, 226.7, 510, and/or 512, or do California Labor Code § 98 and the LCPAGA provide an employee's exclusive remedy for alleged violations of those statutes?

3.    Does California law require Defendant to provide a 30-minute meal period for each 5-hour shift?

4.    Does California Labor Code § 226.7 (requiring employers to pay extra wages if they fail to "provide" a meal period as required by an applicable Wage Order) authorize a court to award extra wages to an employee who was authorized and permitted to take a meal period, but chose not to take it? *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007) (Judge Walker held that an employer provides a meal period if it "offers" it; California law does not require employers to ensure that workers take meal breaks).

5.    Does California Labor Code § 226.7 (requiring employers to pay extra wages if they fail to "provide" a rest period as required by an applicable Wage Order) authorize a court to award extra wages to an employee who was authorized and permitted to take rest periods, but chose not to take them. *Id*.

/ / / / /

6. Did the paystubs Chevron provided to any or all of its California employees during the pay periods at issue in this case fail to comply with the requirements of California Labor Code § 226? If so, which ones failed to comply and in which way(s) did they fail to comply?

7. In light of the fact that her employment at Chevron was involuntarily terminated, does Plaintiff have standing to seek waiting time penalties pursuant to California Labor Code § 203 for employees who voluntarily resigned?

8. In light of the fact that her employment at Chevron was involuntarily terminated, does Plaintiff have standing to seek LCPAGA penalties for alleged violations of California Labor Code § 202 and/or § 203 for "aggrieved employees" who voluntarily resigned?

9. Do California Labor Code §§ 204, 514, and/or 1194 require employers to pay overtime compensation to employees, as alleged in paragraph 27 of the Complaint?

10. Can Plaintiff recover LCPAGA penalties and/or other penalties for violations of California Labor Code §§ 201, 202, 203, 226, 510, and/or 512 under California Business & Professions Code §§ 17200, *et seq*.? If so, what is the applicable statute of limitations? *See, e.g., Tomlinson v. IndyMac Bank*, 359 F. Supp. 2d 891, 893 (C.D. Cal. 2005) (penalties cannot be recovered under B&P Code §§ 17200, *et seq*.).

11. Can Plaintiff proceed with an LCPAGA claim based on alleged violations of California Labor Code §§ 201 and/or 1198, neither of which were mentioned in the letter her attorney sent to the California Labor & Workforce Development Agency?

12. Can Plaintiff recover both LCPAGA penalties and penalties under California Labor Code § 203 for an alleged violation of California Labor Code §§ 201, 202, and/or 203?

13. Can Plaintiff bring LCPAGA claims on behalf of allegedly "aggrieved employees" without satisfying the requirements of Rule 23 of the Federal Rules of Civil Procedure?

14. Can a FLSA 216(b) opt-in collective action proceed in the same case as a Rule 23 opt-out class action? *Compare Silverman v. Smithkline Beecham Corp.*, 2007 WL 3072274 (C.D. Cal. October 16, 2007) (permitting both kinds of claims to proceed in the same case); *Ellison v. AutoZone, Inc.*, 2007 WL 2701923 (N.D. Cal. September 13, 2007) (same); *Baas v. Dollar Tree Stores, Inc.*, 2007 WL 2462150 (N.D. Cal. August 29, 2007) (same), *with Otto v. Pocono Health*

*Sys.*, 457 F.Supp. 2d 522 (M.D. Pa. 2006) (granting motion to dismiss plaintiffs' Rule 23 state law class claims under Rule 12(b)(6) on grounds that Rule 23 opt-out state law class action claims could not proceed accompanied by a § 216(b) opt-in action), *Himmelman v. Continental Cas. Co.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss/strike plaintiff's Rule 23 class allegations because Rule 23 certification of state law claims is legally incompatible with FLSA claim); and *Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189 (D. N.J. Aug. 11, 2006) (granting defendant's Rule 12(b)(6) motion to dismiss Rule 23 class action allegations because they are incompatible with FLSA collective action).

15. Can a Rule 23 class action be certified in this case? *See, e.g.*, *Blackwell v. Skywest Airlines*, 245 F.R.D. 453 (S.D. Cal. 2007) (unpublished decision denying motion for class certification in a wage and hour case because individual issues predominate over common issues).

16. Can Chevron successfully move to de-certify Plaintiff's FLSA collective action?

**4.      The status of settlement negotiations.**

On June 17, 2008, the parties participated in a settlement conference before Magistrate Judge Wayne D. Brazil. Subsequent to that settlement conference, the parties reached a tentative agreement to settle the instant action. As part of the tentative agreement, the claims and settlement of the instant action are to be incorporated into the class settlement in *Sandoval v. Chevron Stations, Inc.*, Los Angeles Superior Court Case No. BC 367958, pending before the Honorable Judge Victoria Chaney. A stipulation and [proposed] order has been filed in Sandoval regarding the filing of an amended complaint that incorporates the claims of Plaintiff in the instant action.

/ / / / /

**Dated:** August 28, 2008

/s/
Deborah C. Saxe
Aaron L. Agenbroad
*Counsel for Defendant Chevron Stations, Inc.*

/s/
Alan Harris
David Zelenski
*Counsel for Plaintiff Catherine Tremblay*

**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**